# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00655-CV

**Ken Robinson, Appellant**

**v.**

**Gary Lubbering, Amy Lubbering and AnyWare, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-07-000887, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a take-nothing judgment that disregarded a jury's finding awarding contract damages to the plaintiff. The principal issue presented is whether the district court would have abused its discretion in excluding a plaintiff's damages evidence for failure to disclose his basic damages contentions in discovery. Finding no abuse of discretion, we will affirm the district court's judgment.

## BACKGROUND

At relevant times, appellee AnyWare, Inc., was engaged in the business of providing manpower and staffing services in the telecommunications industry. AnyWare was owned by Amy Lubbering, who also served as the company's president. Gary Lubbering, Amy's husband,

served as the company's vice-president.[1]  Earlier in his career, Gary had been a co-worker of appellant Ken Robinson, and the pair had maintained a professional relationship over the years.

As of the late 1990s, Robinson was employed at AT&T, Inc. (AT&T).  In 1999, AT&T entered into a contract with the Texas Department of Information Resources (DIR) to supply telecommunication services to Texas state agencies.  Under this contract or program, known as TEX-AN 2000 or TEX-AN, individual agencies purchased AT&T telecommunication services through DIR, which acted as a reseller, earning revenue by marking up the price AT&T charged.  Between 2000 and 2003, Robinson was involved with TEX-AN from the AT&T side, and he would go on to serve as general manager of the AT&T group that oversaw the TEX-AN contract.  Purportedly due in part to Robinson's relationship with Gary and the company's status as a woman-owned business, AnyWare pursued and ultimately was awarded a subcontract to provide services to AT&T in connection with the TEX-AN contract.  AnyWare's role was to assist AT&T's sales team, in exchange for which AT&T agreed to pay AnyWare a percentage of the revenue AT&T received from DIR for telecommunications services sold to state agencies.

During the fall of 2003, Robinson retired from AT&T and, in January 2004, began working at AnyWare.  By the end of 2004, he had become embroiled in disputes with the Lubberings over his compensation.  Robinson left AnyWare in early 2005 and later sued AnyWare, Gary, and Amy for compensation he claimed to be owed and other economic damages, asserting causes of action for breach of contract by AnyWare, fraud by all of the defendants, and breach of fiduciary duties by the Lubberings.  Robinson alleged that Gary had lured him to leave AT&T and join

---

[1] We use the Lubberings' first names as necessary for clarity.

2

AnyWare with promises or agreements—all oral rather than written—to compensate him with a $6,000 per month base salary, a ten-percent equity ownership in AnyWare by the end of 2004, and a commission equal to ten percent of AnyWare's gross receipts under its subcontract with AT&T. Robinson also alleged that he was promised fifty percent of AnyWare's revenues from new business, including a contract he claimed he had helped generate with the State of Oklahoma.

Additionally, Robinson alleged that Gary promised him a "20% commission from any current business Robinson was able to retain/salvage for AT&T." This allegation related to DIR's award, in 2000, of a contract similar to TEX-AN to SBC Communications, which was then a competitor to AT&T. This arrangement had provided state agencies the choice of purchasing either AT&T or SBC telecommunication services through DIR. Aided by pricing advantages that SBC purportedly possessed under DIR's system for marking up the prices it charged agencies, competition from SBC evidently became fierce. Because AnyWare provided services solely to AT&T and was compensated through a percentage share of that company's revenues from its sales to state agencies, any state agency business that AT&T lost to SBC would also mean lower revenues for AnyWare. Thus, Robinson claimed, AnyWare had urgent need for his services, skills, and state government contacts in dissuading state agencies from switching from AT&T to SBC, and agreed to pay him a twenty-percent cut of any such business he "saved."

Robinson's claims were eventually tried to a jury. Prior to trial, Robinson abandoned his claim for fifty percent of new business, conceding the existence of a February 2005 settlement agreement that had resolved his dispute regarding the Oklahoma contract.[2] During trial, he further

_____

[2] While the existence of this document had been acknowledged by all parties, Robinson had previously maintained that what purported to be his signature on the document was a forgery. He relented, however, after the defendants secured a handwriting expert who opined otherwise.

abandoned all claims except his breach-of-contract claims against AnyWare that were predicated on the alleged oral agreements to provide him a ten-percent equity ownership in AnyWare at the end of 2004, a commission equal to ten percent of AnyWare's gross revenues for services performed for AT&T during his tenure, and a twenty-percent share of revenue from state agency business he "saved" for AnyWare. The district court submitted all three claims to the jury, which failed to find that Robinson and AnyWare had agreed to the ten-percent equity share or ten-percent share of gross revenues, but did find that AnyWare agreed to pay him "twenty (20) percent of the revenue from any and all business attributable to Texas state agencies that [he] saved for Any[W]are." Predicated on that finding, the jury further found that AnyWare had failed to comply with this agreement and awarded Robinson $231,000 in damages resulting from that failure to comply.

Prior to and throughout trial, appellees had objected to and urged the district court to exclude Robinson's evidence of damages on the ground that he had failed to timely disclose or supplement his basic damages contentions in response to requests for disclosures. *See* Tex. R. Civ. P. 193.5, 194.2(d), 194.3, 193.6(a). They also sought a directed verdict on that basis. Robinson maintained that his disclosures were adequate or that he had at least provided the requested information through other means. *See id.* R. 193.5(a)(2). In the alternative, Robinson purported to demonstrate "good cause" and the absence of any unfair surprise or unfair prejudice to appellees, so as to come within the exception to rule 193.6's exclusion requirement. *See id.* R. 193.6(a). The district court opted to carry appellees' objections and motions to exclude through trial and ultimately to submit, over objection, Robinson's damages claims to the jury.

Following the jury's verdict, AnyWare renewed its complaints regarding Robinson's disclosure of his damages contentions, urging that the district court was required to exclude

4

Robinson's damages evidence. On that basis, AnyWare moved the district court to disregard the jury's award of damages on Robinson's "saved" business contract claim. It further urged that Robinson had failed to present legally sufficient evidence of such damages at trial because his proof had been purely speculative and because the "saved" business agreement, as depicted at trial, was unenforceable under the statute of frauds. AnyWare also moved the district court to disregard the jury's findings as to the existence of the "saved" business agreement and AnyWare's breach of it because the evidence at trial established that any such agreement was too vague and indefinite to be enforceable.

Following a hearing, the district court denied AnyWare's motion to disregard the jury's findings as to the existence of the "saved" business agreement and AnyWare's breach of it. However, the court granted AnyWare's motion to disregard the jury's damages finding. It did not indicate the specific ground or grounds on which it relied. In light of that ruling, the district court rendered judgment that Robinson take nothing on each of his claims. Robinson appealed.

**ANALYSIS**

Robinson presents two issues on appeal. First, Robinson urges that the district court erred by disregarding the jury's damages finding. Within this issue, Robinson challenges, as he must to obtain reversal, all three of the grounds that AnyWare had asserted and on which the district court could have relied.[3] In his second issue, Robinson complains that the district court abused its discretion in refusing him a last-minute oral request to continue or postpone trial. In addition to

---

[3] *See Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 325 (Tex. App.—Fort Worth 1998, pet. denied).

contesting Robinson's issues, AnyWare brings a cross-point asserting that the district court erred in failing to disregard the jury's findings as to the existence of the "saved" business agreement and AnyWare's breach of it.[4]

**Discovery responses**

The parties have joined issue chiefly regarding whether the district court would have abused its discretion in excluding Robinson's damages evidence for failure to respond or supplement his damages disclosures, so we will begin our analysis of Robinson's first issue there. We review a trial court's ruling excluding evidence under rule 193.6 for an abuse of discretion. *See Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 13 (Tex. App.—Austin 2005, no pet.). The general test for abuse of discretion is whether the trial court acted without regard to any guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). This is said to occur if either (1) the trial court failed to analyze or apply the law correctly, or (2) with regard to factual issues or matters committed to its discretion, the trial court could reasonably have reached only one decision and failed to do so. *See Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). A trial court does not abuse its discretion when it bases its decision on conflicting evidence, as long as some evidence in the record supports the trial court's decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

---

[4] As our caption reflects, Robinson's notice of appeal named not only AnyWare but the Lubberings individually as appellees. However, all of the parties' issues on appeal concern only the portion of the district court's judgment disposing of Robinson's claims against AnyWare. Robinson has not briefed or argued any complaint with the district court's take-nothing judgment on his claims against the Lubberings after he abandoned those claims at trial. We dismiss Robinson's appeal of that portion of the judgment. *See* Tex. R. App. P. 38.1(i). Similarly, for clarity, we refer to AnyWare as the sole appellee.

### *Initial responses*

The discovery period in this case closed in early May 2009, thirty days prior to the trial setting on June 1, 2009. In 2008, AnyWare served on Robinson requests for disclosures of all of the information enumerated in Rule of Civil Procedure 194, including "the amount and any method of calculating economic damages." *See* Tex. R. Civ. P. 194.2(d). On July 2, 2008, Robinson served a response to the requests. Regarding his damages contentions, Robinson stated, "Plaintiff seeks his damages proximately caused by Any[W]are's breach of contract, together with reasonable attorney's fees, economic and exemplary damages. The exact amount of these damages is unknown at this time." There is no serious dispute that this response failed to provide the information required by rule 194.2(d).

Because this response was incomplete (if responsive at all) when made, the rules of civil procedure generally required Robinson to serve AnyWare with a supplemental response, in the same form as the initial response and providing the requested information, not later than 30 days before trial. *See id.* R. 193.5. Robinson never did so.

### *Alternative means*

The rules provide, however, that Robinson was not required to serve an explicit supplemental response by 30 days before trial if the "additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses." *See id.* R. 193.5(a)(2). Robinson insists that he provided the required information through his July 2008 disclosure response regarding his "legal theories and . . . factual basis" of his "claims or defenses." *See id.* R. 194.2(c). In that disclosure, Robinson stated, in pertinent part:

7

> Robinson and Defendants entered into an agreement whereby Robinson would be employed by Any[W]are and would receive . . . a 20% commission from any current business Robinson was able to retain for Any[W]are . . . . In exchange, Robinson would attempt to retain current business for Any[W]are (including the AT&T business Any[W]are performed on the State telecom network) and generate new business for the company in Texas and surrounding states. Robinson reported to work for Any[W]are in March 2004.
>
> . . . .
>
> . . . [Robinson] saved Any[W]are approximately $30,000/month in revenue received for work performed for AT&T.

This disclosure tracked almost verbatim Robinson's live petition, which he had filed a few days earlier, on June 27, 2008.

Between this disclosure and his live petition, Robinson asserts that he "unquestionably put Any[W]are on notice that his basic assertion was that he saved the company approximately $30,000 of AT&T revenue each month and was therefore entitled to 20% of these monthly savings ($6,000/month)." He adds that AnyWare "obviously" knew that his efforts to "save" business began "in the late Summer and Fall of 2004, and that its contract with AT&T lasted until April of 2007, resulting in at least a $186,000 obligation to Robinson (i.e., $6,000 x 31 months)."

Although rule 194(d) disclosures "are not properly used to require a party to marshal evidence or brief legal issues," they "are intended to require disclosure of a party's basic assertions." *See id.* R. 194 cmt. 2. To illustrate such "basic contentions," the Texas Supreme Court cited the example of "how loss of past earnings and future earning capacity was calculated." *Id.* Robinson's rule 194.2(c) disclosure failed to provide such "basic contentions." Among other deficiencies, it lacked any explanation as to how he calculated the $30,000 figure for monthly "saved" revenue,

such as his basic assumptions regarding which agency or agencies' business he "saved," the number of months for which he contends he was entitled to commissions for such "saved" business, and the total amount of his damages.

The first time Robinson provided any explanation regarding his calculations of the revenue he "saved" was during a hearing on motions in limine on the day before trial. After AnyWare urged that Robinson's damages evidence should be excluded because Robinson had failed to disclose his basic damages contentions, Robinson's counsel indicated that Robinson was seeking damages running from October 2004[5] until April 2007, which he asserted was when AnyWare's contract with AT&T ended and it stopped serving those agencies. The amount that he settled on as his claimed damages was a range between $500,000 and $800,000. The district court ordered Robinson to explain his calculation to AnyWare by the end of the day and to provide the specifics of his damages model for the saved business, including the amount claimed for each agency.

In response, Robinson provided two pages of handwritten notes listing seven state agencies, a dollar amount for each (e.g., "Texas Department of Transportation. 28.2 M"), "Total Revenues Saved During Period $90,200,000,"[6] "Total Billed From AT&T $138,000,000," "Percentages Saved Over the Period 65%," "Any[W]are Commissions Over the Period $3,872,800," "65% Any[W]are's Commissions Over the Period 2,531,518," and "Damages Due to Robinson @ 20% $506,303.00." His counsel also emailed AnyWare's counsel a link to a Texas Comptroller's

---

[5] Robinson settled on October 2004 as a start date because he asserted that the pricing differential with SBC became an issue in August 2004, and if agencies were contemplating making a change, that would have taken about 60 days.

[6] This figure deviated from the sum of the figures listed by each of the seven agencies, which totaled $93 million.

website with the statement, "Data here is basis of the calculations that we provided you coupled with the recently received AT&T data." When asked to explain the calculations, Robinson's counsel indicated that Robinson had taken the total amount of money DIR paid AT&T from October 2004 through the end of the AT&T-AnyWare contract in April 2007, broken out the amount of money each agency paid AT&T, and calculated the percentage of AT&T's business each agency represented. Robinson's counsel represented that his team had been able to ascertain how much AT&T paid AnyWare during the same period ($3,872,800) based on documents produced by AnyWare, but they had not been able to tell which agencies those payments came from. Based on the percentage of AT&T's business that Robinson remembered each agency representing from his work at AT&T, however, Robinson estimated that he had saved sixty-five percent (65%) of AT&T's business. Sixty-five percent of $3,872,800 (the total revenue AnyWare had received from AT&T) equaled approximately $2.5 million, and twenty percent of approximately $2.5 million was approximately $500,000.

At trial, Robinson testified that while he or others working for him met with at least seven TEX-AN customer agencies and six did not switch to SBC (which, in his view, meant that he "saved" their business), he testified that he was only seeking damages from three of those agencies—the Department of Health and Human Services, the Department of Public Safety, and the Department of Transportation (TxDOT)—"because these are the three agencies that I have the most knowledge [of]." To calculate his damages, Robinson relied on a document produced by AnyWare indicating that AnyWare's total revenue from TEX-AN between October 2004 and April 2007 was $3.3 million. Although the document did not break out AnyWare's revenue by state agency, Robinson testified that he could recall from his work at AT&T the percentage of AT&T

and AnyWare's business each agency represented. He testified that Health and Human Services represented "[a]t least 30 percent" of AnyWare's TEX-AN business, TxDOT "never really fell below 20 percent," and Department of Public Safety was "4 percent." Then he calculated the revenue for each agency based on those percentages and multiplied those revenue numbers by his claimed twenty-percent commission, testifying that he was owed $198,000 for Health and Human Services, $132,000 for TxDOT, and $26,400 for Department of Public Safety, totaling $356,400. The jury, as noted, awarded Robinson $231,000, a figure that does not obviously correspond to those to which Robinson testified.

Robinson's discovery responses failed to disclose any of these basic damages contentions. The agencies whose business he "saved" were not disclosed until the day before trial began, and he did not reveal which "saved" basis for which he sought damages until he testified at trial. Similarly, Robinson disclosed neither a total amount of damages nor the number of months for which he claimed commissions for "saved" business, and the figures that he now asserts were "obvious" from his disclosures differed markedly from the figures he claimed during the motions-in-limine hearing and at trial. Robinson likewise did not disclose the damages model on which he relied at trial until the motions-in-limine hearing.

Robinson suggests that his disclosures were similar to those determined to be sufficient in *McGehee v. Campbell*, No. 01-08-1023-CV, 2010 Tex. App. LEXIS 2306, *8-12 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, no pet.) (mem. op.) (upholding trial court's refusal to exclude certain damages). In *McGehee*, a suit to partition real estate between two people, the plaintiff Campbell timely served disclosures indicating that he sought damages for being wrongfully excluded from a home beginning in August 2001, and that he alleged the reasonable rental value

11

of the property was $3,000 per month. *Id.* at *12. The court of appeals held these statements were sufficient to provide notice to McGehee that Campbell was seeking $1,500 per month between August 2001 until time of trial. In addition to the differences between fair monthly rental value (a function of known market factors) and Robinson's $30,000 per month "saved" business figure (the origins of which were not revealed), Campbell, unlike Robinson, disclosed both the specific time period for which he sought these damages and a total amount. *See id*. Furthermore, unlike Robinson, Campbell advocated the same damages calculation at trial. *See id*. at *10-11. *McGehee* is plainly distinguishable from this case.

Robinson also relies on *Talley Construction Co. v. Rodriguez*, in which the court of appeals upheld a trial court's refusal to exclude certain evidence of damages, holding that a plaintiff had adequately disclosed his damage contentions in a letter attached to his petition that disclosed details of the alleged oral agreement on which the plaintiff was suing, a description of work done, a list of payments received for work, and the balance allegedly left unpaid. No. 01-03-01147-CV, 2006 Tex. App. LEXIS 2721, *28-29 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op.) (op. on reh'g). These disclosures, furthermore, proved to be consistent with the plaintiff's trial testimony. *Id*. at *29. As with *McGehee*, Robinson's disclosures fell far short of conveying the extent of information disclosed in *Talley*.

In sum, the district court would not have abused its discretion in determining that Robinson failed to disclose his basic damages contentions as rule 194 requires. Consequently, rule 193.6 mandated that the district court exclude Robinson's damages evidence unless it found either that (1) there was "good cause" for Robinson's failure to timely make or supplement his damages disclosures, or (2) "the failure . . . will not unfairly surprise or unfairly prejudice the

12

other parties." Tex. R. Civ. P. 193.6(a). Robinson had the burden of establishing each exception. *Id.* R. 193.6(b).

### *Good cause*

Robinson asserts that he demonstrated "good cause" for any failure to adequately disclose his damages contentions with proof that, only two weeks before trial, he received "a mountain of documents" from AT&T containing "thousands of entries showing the commissions that AT&T paid to AnyWare," data "highly relevant to his damages model."[7] As it turned out, the district court excluded these documents from evidence because Robinson failed to authenticate them.[8] To prove his damages at trial, Robinson relied on AnyWare documents to show the company's monthly gross revenues from AT&T, and his own memory as to the proportion of that revenue that he attributed to each "saved" agency—a basic damages model which, again, he never disclosed in discovery. The district court would not have abused its discretion in determining that the AT&T documents had no bearing on Robinson's failure to timely and completely disclose his basic damages contentions.

In addition, even if the AT&T documents provided information somehow essential to Robinson's ability to make timely and complete disclosure of his basic damages contentions, the

---

[7] Citing this late discovery and his purported need to supplement his discovery responses, Robinson made the oral motion for continuance or postponement that is the subject of his second issue.

[8] Robinson did not obtain a business-records affidavit from AT&T until after trial began, and the district court refused to grant him leave to file the affidavit late. *See* Tex. R. Evid. 902(10)(a) (requiring affidavits to be filed at least fourteen days before trial). Robinson thereafter attempted to authenticate the documents through his own testimony as a former AT&T employee, but the district court refused to admit them.

district court would not have abused its discretion in determining that Robinson was responsible for his late receipt of them from AT&T. Although Robinson insinuates that AnyWare had obtained these documents through discovery in a separate suit against AT&T, possessed them all along, and engaged in obstructionist tactics to prevent him from obtaining them, the record reflects that AnyWare notified Robinson ten months before trial that the terms of the protective order in the AT&T-AnyWare litigation had required it to return to AT&T all documents produced by AT&T in that litigation. Despite this, Robinson waited until forty days before trial—ten days before the end of the discovery period—to notice the deposition of AT&T's custodian of records and try to obtain the documents. Under such circumstances, we cannot conclude that the district court would have abused its discretion in failing to find good cause for Robinson's failure to disclose or supplement his basic damages contentions. *See Melendez v. Exxon Corp.*, 998 S.W.2d 266, 276 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (no good cause for late discovery supplementation when party had been aware of potential witness for three months before attempting to supplement discovery response); *see also* Tex. R. Civ. P. 190 cmt. 4 ("unless otherwise ordered or agreed, parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period").

### *Lack of unfair surprise and unfair prejudice*

Finally, Robinson urges that the district court abused its discretion in failing to find that AnyWare was not unfairly surprised and not unfairly prejudiced by any failure to timely disclose his basic damages contentions. He again relies on his live petition and disclosures concerning his "legal theories and . . . factual basis" of his "claims or defenses" and what he asserts

was information about AnyWare's revenues of which the company would have been aware. In light of the circumstances summarized above, we cannot conclude that the district court abused its discretion in failing to find that AnyWare was unfairly surprised or unfairly prejudiced by Robinson's failure to disclose or supplement his basic damages contentions. To the contrary, the record suggests the sort of trial-by-ambush and on-the-stand revelations that the discovery rules were intended to prevent. *See Explanatory Statement Accompanying the 1999 Amendments to the Rules of Civil Procedure Governing Discovery*, Order of Approval of the Revisions to the Texas Rules of Civil Procedure, Misc. Docket No. 98-9196, (Tex. Nov. 9, 1998), printed at 61 Tex. Bar J. 1140, 1140 (Dec. 1998) ("Discovery in civil cases is founded on the principle that justice is best served when litigants may obtain information not in their possession to prosecute and defend claims."); *see also McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 199 (Tex. App.—Austin 2005, pet. denied).

Robinson cites a number of Texas and federal cases in support of his assertions that the record demonstrates the absence of unfair surprise and unfair prejudice. In the two Texas cases Robinson cites, the late-disclosing parties had provided enough information to allow their opposition to understand how they were calculating damages. *See Marin v. IESI TX Corp.*, 317 S.W.3d 314, 323 (Tex. App.—Houston [1st Dist.] 2010, pet. filed) (op. on reh'g) (admitting invoice from accounting firm when petition specifically sought damage for cost of investigating and correcting false accounting entries, amount paid to the accounting firm had been disclosed at pretrial deposition, and invoice was not itemized or detailed, but only stated single amount); *Talley Constr. Co.*, 2006 Tex. App. LEXIS 2721, at *28-29 (admitting testimony about economic damages when letter attached to petition had disclosed plaintiff's damages calculation by disclosing details of

original oral agreement, description of work done, list of payments received for work, and balance left unpaid). In the federal cases Robinson cites, the opposing party had actually been made aware of the information at issue.[9] In contrast to these cases, Robinson failed to disclose his basic damages model—including the agencies whose business he "saved," how the value of their business is calculated, and for how long—until trial.

Finally, Robinson also attempts to shift the responsibility for discerning his damages calculation to AnyWare, suggesting (without citation to the record) that it "failed to explore the topic [of the twenty-percent commission on saved business] with Robinson at his deposition." The discovery rules, as previously indicated, instead place the responsibility on Robinson to timely provide and supplement his basic damages contentions. The district court would not have abused its discretion in finding that Robinson failed to meet that burden and further failed to demonstrate good cause or lack of unfair surprise or unfair prejudice to AnyWare. Consequently,

---

[9] *See Kellogg Brown & Root Int'l Inc. v. Altanmia Commerical Mktg. Co. W.L.L.*, No. H-07-2684, 2009 U.S. Dist. LEXIS 16007, *31-32 (S.D. Tex. Mar. 2, 2009) (denying motion for reconsideration of ruling that affidavit of undisclosed witness should be admitted because witness's identity and testimony contained in affidavit had been previously disclosed in arbitration proceedings between same parties); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07 C 3061, 2008 U.S. Dist. LEXIS 21608, *5-6 (N.D. Ill. Mar. 18, 2008) (ruling on motion in limine that testimony from undisclosed witnesses was not barred because one witness's identity and relevance to litigation had been made known during deposition of another witness and other witnesses were disclosed during discovery period and were opposing party's former employees); *Huffman v. City of Conroe, Tex.*, No. H-07-1964, 2008 U.S. Dist. LEXIS 74311, *4-5 (S.D. Tex. Sept. 26, 2008) (denying motion to strike late-disclosed witness based on court's finding that opposing party had known about witness and his knowledge of issues related to case for at least six months); *Capuano v. Consolidated Graphics, Inc.*, Civil Action No. 06 C 5924, 2007 U.S. Dist. LEXIS 66626, *6-7 (N.D. Ill. Sept. 7, 2007) (denying motion in limine seeking to exclude allegedly undisclosed damages evidence because complaining party had knowledge of documents and information, as well as witnesses' identities and relevance from outset of case, but allowing party to object at trial to any previously undisclosed damages exhibits).

the district court had no discretion but to exclude Robinson's damages evidence. *See* Tex. R. Civ. P. 193.6(a). We overrule Robinson's first issue.

**Continuance or postponement**

In his second issue, Robinson complains that the district court abused its discretion in refusing to grant a continuance or temporary postponement of trial so he could supplement his disclosures concerning damages in light of the AT&T documents. *See id.* R. 193.6(c) ("Even if the party seeking to introduce the evidence . . . fails to carry the burden [to show lack of unfair surprise or unfair prejudice], the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented . . . ."). Robinson orally requested this continuance or postponement during the hearing on motions in limine on the day before trial began, after AnyWare raised its complaints regarding the adequacy of his damages disclosures. On this record, we cannot conclude that the district court abused its discretion in refusing to grant Robinson a continuance. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

As previously indicated, Robinson waited until ten days before the close of the discovery period to notice the deposition of AT&T's records custodian. Moreover, the trial setting was continued twice, once based on an agreed motion filed on April 1, 2008, and the second time on Robinson's motion filed in March 2009, which was opposed by AnyWare and the Lubberings. The district court granted the continuance with the admonishment that "[n]o further requests shall be granted absent exigent circumstances." The court's order also explicitly moved the close of the discovery period to thirty days before the June 1, 2009 trial date.

17

When Robinson orally requested the third continuance or postponement, the district court observed that the prior continuance order had indicated there would be no more delays, "absent exigent circumstances," and that the court did not consider Robinson's failure to get his discovery done to be an exigent circumstance. Robinson's counsel stated, "I'm not jumping up and down for a continuance, Judge," to which the trial judge responded, "Yeah, and he's not accepting your solution, so let's move on." Robinson did not file a written motion for continuance that day or any day thereafter.

A motion for continuance that is not in writing or compliant with rule 251 does not preserve error. *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 251; *see also Dempsey v. Dempsey*, 227 S.W.3d 771, 776 (Tex. App.—El Paso 2005, no pet.) (op. on reh'g). Even if error had been preserved, we cannot conclude that the district court abused its discretion in declining to further continue or postpone trial. We overrule Robinson's second issue.[10]

---

[10] In connection with his second issue, Robinson asserts that, in the alternative to his first two issues, we should remand this case for jury determination of two questions that went unanswered in the charge. Predicated on the jury's failure to find that Robinson and AnyWare "agree[d] that Ken Robinson would receive twenty (20) percent of the revenue from any and all business attributable to Texas state agencies that Ken Robinson saved for Any[W]are," Question 6 of the charge inquired whether Robinson had "saved Any[W]are's revenue attributable to the Texas Department of Transportation." Predicated on an affirmative finding in that question, Question 7 inquired as to Robinson's damages from AnyWare's failure to comply with its agreement concerning TxDOT. Having found in the affirmative as to the broader agreement regarding "any and all business attributable to Texas state agencies," the jury did not answer Questions 6 or 7. Robinson urges that we should remand those issues to the district court. However, the district court has not set aside or disregarded the jury's affirmative finding that Robinson and AnyWare formed the broader agreement concerning "any and all business attributable to Texas state agencies"—the converse of the predicate for reaching Questions 6 and 7—and Robinson did not preserve any complaint regarding the manner in which these questions were predicated or the jury's failure to answer Questions 6 or 7. Consequently, Robinson has presented nothing for review. *See* Tex. R. App. P. 33.1(a).

# CONCLUSION

We have concluded that the district court would not have abused its discretion in excluding Robinson's damages evidence and in refusing him a continuance to supplement his disclosures. Having excluded Robinson's damages evidence, the district court would not have erred in disregarding the jury's damages finding and rendering a take-nothing judgment on Robinson's claims against AnyWare. Consequently, we need not reach either Robinson's arguments challenging AnyWare's other grounds for disregarding the damages finding or AnyWare's cross-point concerning its motion to disregard the jury's findings that the "saved" business agreement was formed and that AnyWare breached it. *See* Tex. R. Civ. P. 47.1. We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: March 2, 2011

19