TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00655-CV






Ken Robinson, Appellant


v.


Gary Lubbering, Amy Lubbering and AnyWare, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. D-1-GN-07-000887, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 This is an appeal from a take-nothing judgment that disregarded a jury's finding
awarding contract damages to the plaintiff. The principal issue presented is whether the district court
would have abused its discretion in excluding a plaintiff's damages evidence for failure to disclose
his basic damages contentions in discovery. Finding no abuse of discretion, we will affirm the
district court's judgment.


BACKGROUND

 At relevant times, appellee AnyWare, Inc., was engaged in the business of providing
manpower and staffing services in the telecommunications industry. AnyWare was owned by
Amy Lubbering, who also served as the company's president. Gary Lubbering, Amy's husband,
served as the company's vice-president. (1) Earlier in his career, Gary had been a co-worker of
appellant Ken Robinson, and the pair had maintained a professional relationship over the years.

 As of the late 1990s, Robinson was employed at AT&T, Inc. (AT&T). In 1999,
AT&T entered into a contract with the Texas Department of Information Resources (DIR) to supply
telecommunication services to Texas state agencies. Under this contract or program, known as TEX-AN 2000 or TEX-AN, individual agencies purchased AT&T telecommunication services through
DIR, which acted as a reseller, earning revenue by marking up the price AT&T charged. Between
2000 and 2003, Robinson was involved with TEX-AN from the AT&T side, and he would go on
to serve as general manager of the AT&T group that oversaw the TEX-AN contract. Purportedly
due in part to Robinson's relationship with Gary and the company's status as a woman-owned
business, AnyWare pursued and ultimately was awarded a subcontract to provide services to AT&T
in connection with the TEX-AN contract. AnyWare's role was to assist AT&T's sales team, in
exchange for which AT&T agreed to pay AnyWare a percentage of the revenue AT&T received from
DIR for telecommunications services sold to state agencies.

 During the fall of 2003, Robinson retired from AT&T and, in January 2004, began
working at AnyWare. By the end of 2004, he had become embroiled in disputes with the Lubberings
over his compensation. Robinson left AnyWare in early 2005 and later sued AnyWare, Gary,
and Amy for compensation he claimed to be owed and other economic damages, asserting causes
of action for breach of contract by AnyWare, fraud by all of the defendants, and breach of fiduciary
duties by the Lubberings. Robinson alleged that Gary had lured him to leave AT&T and join
AnyWare with promises or agreements--all oral rather than written--to compensate him with a
$6,000 per month base salary, a ten-percent equity ownership in AnyWare by the end of 2004, and
a commission equal to ten percent of AnyWare's gross receipts under its subcontract with AT&T.
Robinson also alleged that he was promised fifty percent of AnyWare's revenues from new business,
including a contract he claimed he had helped generate with the State of Oklahoma.

 Additionally, Robinson alleged that Gary promised him a "20% commission
from any current business Robinson was able to retain/salvage for AT&T." This allegation related
to DIR's award, in 2000, of a contract similar to TEX-AN to SBC Communications, which was
then a competitor to AT&T. This arrangement had provided state agencies the choice of purchasing
either AT&T or SBC telecommunication services through DIR. Aided by pricing advantages that
SBC purportedly possessed under DIR's system for marking up the prices it charged agencies,
competition from SBC evidently became fierce. Because AnyWare provided services solely to
AT&T and was compensated through a percentage share of that company's revenues from its sales
to state agencies, any state agency business that AT&T lost to SBC would also mean lower revenues
for AnyWare. Thus, Robinson claimed, AnyWare had urgent need for his services, skills, and
state government contacts in dissuading state agencies from switching from AT&T to SBC, and
agreed to pay him a twenty-percent cut of any such business he "saved."

 Robinson's claims were eventually tried to a jury. Prior to trial, Robinson abandoned
his claim for fifty percent of new business, conceding the existence of a February 2005 settlement
agreement that had resolved his dispute regarding the Oklahoma contract. (2) During trial, he further
abandoned all claims except his breach-of-contract claims against AnyWare that were predicated on
the alleged oral agreements to provide him a ten-percent equity ownership in AnyWare at the end
of 2004, a commission equal to ten percent of AnyWare's gross revenues for services performed
for AT&T during his tenure, and a twenty-percent share of revenue from state agency business
he "saved" for AnyWare. The district court submitted all three claims to the jury, which failed to
find that Robinson and AnyWare had agreed to the ten-percent equity share or ten-percent share of
gross revenues, but did find that AnyWare agreed to pay him "twenty (20) percent of the revenue
from any and all business attributable to Texas state agencies that [he] saved for Any[W]are."
Predicated on that finding, the jury further found that AnyWare had failed to comply with this
agreement and awarded Robinson $231,000 in damages resulting from that failure to comply.

 Prior to and throughout trial, appellees had objected to and urged the district court
to exclude Robinson's evidence of damages on the ground that he had failed to timely disclose or
supplement his basic damages contentions in response to requests for disclosures. See Tex. R. Civ.
P. 193.5, 194.2(d), 194.3, 193.6(a). They also sought a directed verdict on that basis. Robinson
maintained that his disclosures were adequate or that he had at least provided the requested
information through other means. See id. R. 193.5(a)(2). In the alternative, Robinson purported
to demonstrate "good cause" and the absence of any unfair surprise or unfair prejudice to appellees,
so as to come within the exception to rule 193.6's exclusion requirement. See id. R. 193.6(a). The
district court opted to carry appellees' objections and motions to exclude through trial and ultimately
to submit, over objection, Robinson's damages claims to the jury.

 Following the jury's verdict, AnyWare renewed its complaints regarding Robinson's
disclosure of his damages contentions, urging that the district court was required to exclude
Robinson's damages evidence. On that basis, AnyWare moved the district court to disregard
the jury's award of damages on Robinson's "saved" business contract claim. It further urged that
Robinson had failed to present legally sufficient evidence of such damages at trial because his
proof had been purely speculative and because the "saved" business agreement, as depicted at trial,
was unenforceable under the statute of frauds. AnyWare also moved the district court to disregard
the jury's findings as to the existence of the "saved" business agreement and AnyWare's breach of
it because the evidence at trial established that any such agreement was too vague and indefinite to
be enforceable.

 Following a hearing, the district court denied AnyWare's motion to disregard the
jury's findings as to the existence of the "saved" business agreement and AnyWare's breach of it.
However, the court granted AnyWare's motion to disregard the jury's damages finding. It did not
indicate the specific ground or grounds on which it relied. In light of that ruling, the district court
rendered judgment that Robinson take nothing on each of his claims. Robinson appealed.

 

ANALYSIS

 Robinson presents two issues on appeal. First, Robinson urges that the district court
erred by disregarding the jury's damages finding. Within this issue, Robinson challenges, as he must
to obtain reversal, all three of the grounds that AnyWare had asserted and on which the district court
could have relied. (3) In his second issue, Robinson complains that the district court abused its
discretion in refusing him a last-minute oral request to continue or postpone trial. In addition to
contesting Robinson's issues, AnyWare brings a cross-point asserting that the district court erred in
failing to disregard the jury's findings as to the existence of the "saved" business agreement and
AnyWare's breach of it. (4)


Discovery responses 

 The parties have joined issue chiefly regarding whether the district court would
have abused its discretion in excluding Robinson's damages evidence for failure to respond or
supplement his damages disclosures, so we will begin our analysis of Robinson's first issue there.
We review a trial court's ruling excluding evidence under rule 193.6 for an abuse of discretion. See
Cunningham v. Columbia/St. David's Healthcare Sys., L.P., 185 S.W.3d 7, 13 (Tex. App.--Austin
2005, no pet.). The general test for abuse of discretion is whether the trial court acted without
regard to any guiding rules or principles. Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004).
This is said to occur if either (1) the trial court failed to analyze or apply the law correctly, or (2) with
regard to factual issues or matters committed to its discretion, the trial court could reasonably
have reached only one decision and failed to do so. See Walker v. Packer, 827 S.W.2d 833, 839-40
(Tex. 1992) (orig. proceeding). A trial court does not abuse its discretion when it bases its decision
on conflicting evidence, as long as some evidence in the record supports the trial court's decision.
Unifund CCR Partners v. Villa, 299 S.W.3d 92, 97 (Tex. 2009).

 Initial responses 

 The discovery period in this case closed in early May 2009, thirty days prior to the
trial setting on June 1, 2009. In 2008, AnyWare served on Robinson requests for disclosures of all
of the information enumerated in Rule of Civil Procedure 194, including "the amount and any
method of calculating economic damages." See Tex. R. Civ. P. 194.2(d). On July 2, 2008, Robinson
served a response to the requests. Regarding his damages contentions, Robinson stated, "Plaintiff
seeks his damages proximately caused by Any[W]are's breach of contract, together with reasonable
attorney's fees, economic and exemplary damages. The exact amount of these damages is unknown
at this time." There is no serious dispute that this response failed to provide the information required
by rule 194.2(d).

 Because this response was incomplete (if responsive at all) when made, the rules of
civil procedure generally required Robinson to serve AnyWare with a supplemental response, in the
same form as the initial response and providing the requested information, not later than 30 days
before trial. See id. R. 193.5. Robinson never did so.


 Alternative means

 The rules provide, however, that Robinson was not required to serve an explicit
supplemental response by 30 days before trial if the "additional or corrective information has been
made known to the other parties in writing, on the record at a deposition, or through other discovery
responses." See id. R. 193.5(a)(2). Robinson insists that he provided the required information
through his July 2008 disclosure response regarding his "legal theories and . . . factual basis" of his
"claims or defenses." See id. R. 194.2(c). In that disclosure, Robinson stated, in pertinent part:

Robinson and Defendants entered into an agreement whereby Robinson would be
employed by Any[W]are and would receive . . . a 20% commission from any current
business Robinson was able to retain for Any[W]are . . . . In exchange, Robinson
would attempt to retain current business for Any[W]are (including the AT&T
business Any[W]are performed on the State telecom network) and generate new
business for the company in Texas and surrounding states. Robinson reported to
work for Any[W]are in March 2004.

 

 . . . .


. . . [Robinson] saved Any[W]are approximately $30,000/month in revenue received
for work performed for AT&T.



This disclosure tracked almost verbatim Robinson's live petition, which he had filed a few days
earlier, on June 27, 2008.

 Between this disclosure and his live petition, Robinson asserts that he
"unquestionably put Any[W]are on notice that his basic assertion was that he saved the
company approximately $30,000 of AT&T revenue each month and was therefore entitled to 20%
of these monthly savings ($6,000/month)." He adds that AnyWare "obviously" knew that his
efforts to "save" business began "in the late Summer and Fall of 2004, and that its contract with
AT&T lasted until April of 2007, resulting in at least a $186,000 obligation to Robinson (i.e., $6,000
x 31 months)."

 Although rule 194(d) disclosures "are not properly used to require a party to marshal
evidence or brief legal issues," they "are intended to require disclosure of a party's basic assertions."
See id. R. 194 cmt. 2. To illustrate such "basic contentions," the Texas Supreme Court cited the
example of "how loss of past earnings and future earning capacity was calculated." Id. Robinson's
rule 194.2(c) disclosure failed to provide such "basic contentions." Among other deficiencies, it
lacked any explanation as to how he calculated the $30,000 figure for monthly "saved" revenue,
such as his basic assumptions regarding which agency or agencies' business he "saved," the number
of months for which he contends he was entitled to commissions for such "saved" business, and the
total amount of his damages.

 The first time Robinson provided any explanation regarding his calculations of
the revenue he "saved" was during a hearing on motions in limine on the day before trial. After
AnyWare urged that Robinson's damages evidence should be excluded because Robinson had failed
to disclose his basic damages contentions, Robinson's counsel indicated that Robinson was seeking
damages running from October 2004 (5) until April 2007, which he asserted was when AnyWare's
contract with AT&T ended and it stopped serving those agencies. The amount that he settled on
as his claimed damages was a range between $500,000 and $800,000. The district court ordered
Robinson to explain his calculation to AnyWare by the end of the day and to provide the specifics
of his damages model for the saved business, including the amount claimed for each agency.

 In response, Robinson provided two pages of handwritten notes listing seven state
agencies, a dollar amount for each (e.g., "Texas Department of Transportation. 28.2 M"), "Total
Revenues Saved During Period $90,200,000," (6) "Total Billed From AT&T $138,000,000,"
"Percentages Saved Over the Period 65%," "Any[W]are Commissions Over the Period $3,872,800,"
"65% Any[W]are's Commissions Over the Period 2,531,518," and "Damages Due to Robinson @
20% $506,303.00." His counsel also emailed AnyWare's counsel a link to a Texas Comptroller's
website with the statement, "Data here is basis of the calculations that we provided you coupled with
the recently received AT&T data." When asked to explain the calculations, Robinson's counsel
indicated that Robinson had taken the total amount of money DIR paid AT&T from October 2004
through the end of the AT&T-AnyWare contract in April 2007, broken out the amount of money
each agency paid AT&T, and calculated the percentage of AT&T's business each agency
represented. Robinson's counsel represented that his team had been able to ascertain how much
AT&T paid AnyWare during the same period ($3,872,800) based on documents produced by
AnyWare, but they had not been able to tell which agencies those payments came from. Based on
the percentage of AT&T's business that Robinson remembered each agency representing from his
work at AT&T, however, Robinson estimated that he had saved sixty-five percent (65%) of AT&T's
business. Sixty-five percent of $3,872,800 (the total revenue AnyWare had received from AT&T)
equaled approximately $2.5 million, and twenty percent of approximately $2.5 million was
approximately $500,000.

 At trial, Robinson testified that while he or others working for him met with at
least seven TEX-AN customer agencies and six did not switch to SBC (which, in his view, meant
that he "saved" their business), he testified that he was only seeking damages from three of those
agencies--the Department of Health and Human Services, the Department of Public Safety, and the
Department of Transportation (TxDOT)--"because these are the three agencies that I have the most
knowledge [of]." To calculate his damages, Robinson relied on a document produced by AnyWare
indicating that AnyWare's total revenue from TEX-AN between October 2004 and April 2007
was $3.3 million. Although the document did not break out AnyWare's revenue by state agency,
Robinson testified that he could recall from his work at AT&T the percentage of AT&T
and AnyWare's business each agency represented. He testified that Health and Human Services
represented "[a]t least 30 percent" of AnyWare's TEX-AN business, TxDOT "never really fell below
20 percent," and Department of Public Safety was "4 percent." Then he calculated the revenue for
each agency based on those percentages and multiplied those revenue numbers by his claimed
twenty-percent commission, testifying that he was owed $198,000 for Health and Human Services,
$132,000 for TxDOT, and $26,400 for Department of Public Safety, totaling $356,400. The jury,
as noted, awarded Robinson $231,000, a figure that does not obviously correspond to those to which
Robinson testified.

 Robinson's discovery responses failed to disclose any of these basic damages
contentions. The agencies whose business he "saved" were not disclosed until the day before
trial began, and he did not reveal which "saved" basis for which he sought damages until he testified
at trial. Similarly, Robinson disclosed neither a total amount of damages nor the number of months
for which he claimed commissions for "saved" business, and the figures that he now asserts were
"obvious" from his disclosures differed markedly from the figures he claimed during the motions-in-limine hearing and at trial. Robinson likewise did not disclose the damages model on which he
relied at trial until the motions-in-limine hearing.

 Robinson suggests that his disclosures were similar to those determined to
be sufficient in McGehee v. Campbell, No. 01-08-1023-CV, 2010 Tex. App. LEXIS 2306, *8-12
(Tex. App.--Houston [1st Dist.] Mar. 25, 2010, no pet.) (mem. op.) (upholding trial court's refusal
to exclude certain damages). In McGehee, a suit to partition real estate between two people, the
plaintiff Campbell timely served disclosures indicating that he sought damages for being wrongfully
excluded from a home beginning in August 2001, and that he alleged the reasonable rental value
of the property was $3,000 per month. Id. at *12. The court of appeals held these statements were
sufficient to provide notice to McGehee that Campbell was seeking $1,500 per month between
August 2001 until time of trial. In addition to the differences between fair monthly rental value
(a function of known market factors) and Robinson's $30,000 per month "saved" business figure
(the origins of which were not revealed), Campbell, unlike Robinson, disclosed both the specific
time period for which he sought these damages and a total amount. See id. Furthermore, unlike
Robinson, Campbell advocated the same damages calculation at trial. See id. at *10-11. McGehee
is plainly distinguishable from this case.

 Robinson also relies on Talley Construction Co. v. Rodriguez, in which the court of
appeals upheld a trial court's refusal to exclude certain evidence of damages, holding that a plaintiff
had adequately disclosed his damage contentions in a letter attached to his petition that disclosed
details of the alleged oral agreement on which the plaintiff was suing, a description of work done,
a list of payments received for work, and the balance allegedly left unpaid. No. 01-03-01147-CV,
2006 Tex. App. LEXIS 2721, *28-29 (Tex. App.--Houston [1st Dist.] Apr. 6, 2006, no pet.)
(mem. op.) (op. on reh'g). These disclosures, furthermore, proved to be consistent with the
plaintiff's trial testimony. Id. at *29. As with McGehee, Robinson's disclosures fell far short of
conveying the extent of information disclosed in Talley.

 In sum, the district court would not have abused its discretion in determining that
Robinson failed to disclose his basic damages contentions as rule 194 requires. Consequently,
rule 193.6 mandated that the district court exclude Robinson's damages evidence unless it found
either that (1) there was "good cause" for Robinson's failure to timely make or supplement his
damages disclosures, or (2) "the failure . . . will not unfairly surprise or unfairly prejudice the
other parties." Tex. R. Civ. P. 193.6(a). Robinson had the burden of establishing each exception.
Id. R. 193.6(b).


 Good cause

 Robinson asserts that he demonstrated "good cause" for any failure to adequately
disclose his damages contentions with proof that, only two weeks before trial, he received "a
mountain of documents" from AT&T containing "thousands of entries showing the commissions
that AT&T paid to AnyWare," data "highly relevant to his damages model." (7) As it turned out, the
district court excluded these documents from evidence because Robinson failed to authenticate
them. (8) To prove his damages at trial, Robinson relied on AnyWare documents to show the
company's monthly gross revenues from AT&T, and his own memory as to the proportion of that
revenue that he attributed to each "saved" agency--a basic damages model which, again, he never
disclosed in discovery. The district court would not have abused its discretion in determining that
the AT&T documents had no bearing on Robinson's failure to timely and completely disclose his
basic damages contentions.

 In addition, even if the AT&T documents provided information somehow essential
to Robinson's ability to make timely and complete disclosure of his basic damages contentions, the
district court would not have abused its discretion in determining that Robinson was responsible
for his late receipt of them from AT&T. Although Robinson insinuates that AnyWare had obtained
these documents through discovery in a separate suit against AT&T, possessed them all along,
and engaged in obstructionist tactics to prevent him from obtaining them, the record reflects that
AnyWare notified Robinson ten months before trial that the terms of the protective order in the
AT&T-AnyWare litigation had required it to return to AT&T all documents produced by AT&T in
that litigation. Despite this, Robinson waited until forty days before trial--ten days before the end of
the discovery period--to notice the deposition of AT&T's custodian of records and try to obtain the
documents. Under such circumstances, we cannot conclude that the district court would have abused
its discretion in failing to find good cause for Robinson's failure to disclose or supplement his basic
damages contentions. See Melendez v. Exxon Corp., 998 S.W.2d 266, 276 (Tex. App.--Houston
[14th Dist.] 1999, no pet.) (no good cause for late discovery supplementation when party had been
aware of potential witness for three months before attempting to supplement discovery response);
see also Tex. R. Civ. P. 190 cmt. 4 ("unless otherwise ordered or agreed, parties seeking discovery
must serve requests sufficiently far in advance of the end of the discovery period that the deadline
for responding will be within the discovery period").


 Lack of unfair surprise and unfair prejudice

 Finally, Robinson urges that the district court abused its discretion in failing to
find that AnyWare was not unfairly surprised and not unfairly prejudiced by any failure to timely
disclose his basic damages contentions. He again relies on his live petition and disclosures
concerning his "legal theories and . . . factual basis" of his "claims or defenses" and what he asserts
was information about AnyWare's revenues of which the company would have been aware. In
light of the circumstances summarized above, we cannot conclude that the district court abused its
discretion in failing to find that AnyWare was unfairly surprised or unfairly prejudiced by
Robinson's failure to disclose or supplement his basic damages contentions. To the contrary, the
record suggests the sort of trial-by-ambush and on-the-stand revelations that the discovery rules
were intended to prevent. See Explanatory Statement Accompanying the 1999 Amendments to
the Rules of Civil Procedure Governing Discovery, Order of Approval of the Revisions to the
Texas Rules of Civil Procedure, Misc. Docket No. 98-9196, (Tex. Nov. 9, 1998), printed at 61 Tex.
Bar J. 1140, 1140 (Dec. 1998) ("Discovery in civil cases is founded on the principle that justice is
best served when litigants may obtain information not in their possession to prosecute and
defend claims."); see also McMillin v. State Farm Lloyds, 180 S.W.3d 183, 199 (Tex. App.--Austin
2005, pet. denied).

 Robinson cites a number of Texas and federal cases in support of his assertions that
the record demonstrates the absence of unfair surprise and unfair prejudice. In the two Texas cases
Robinson cites, the late-disclosing parties had provided enough information to allow their opposition
to understand how they were calculating damages. See Marin v. IESI TX Corp., 317 S.W.3d 314,
323 (Tex. App.--Houston [1st Dist.] 2010, pet. filed) (op. on reh'g) (admitting invoice from
accounting firm when petition specifically sought damage for cost of investigating and correcting
false accounting entries, amount paid to the accounting firm had been disclosed at pretrial
deposition, and invoice was not itemized or detailed, but only stated single amount); Talley Constr.
Co., 2006 Tex. App. LEXIS 2721, at *28-29 (admitting testimony about economic damages when
letter attached to petition had disclosed plaintiff's damages calculation by disclosing details of
original oral agreement, description of work done, list of payments received for work, and balance
left unpaid). In the federal cases Robinson cites, the opposing party had actually been made aware
of the information at issue. (9)
 In contrast to these cases, Robinson failed to disclose his basic damages
model--including the agencies whose business he "saved," how the value of their business is
calculated, and for how long--until trial.

 Finally, Robinson also attempts to shift the responsibility for discerning his
damages calculation to AnyWare, suggesting (without citation to the record) that it "failed to explore
the topic [of the twenty-percent commission on saved business] with Robinson at his deposition."
The discovery rules, as previously indicated, instead place the responsibility on Robinson to
timely provide and supplement his basic damages contentions. The district court would not have
abused its discretion in finding that Robinson failed to meet that burden and further failed to
demonstrate good cause or lack of unfair surprise or unfair prejudice to AnyWare. Consequently,
the district court had no discretion but to exclude Robinson's damages evidence. See Tex. R. Civ.
P. 193.6(a). We overrule Robinson's first issue.


Continuance or postponement

 In his second issue, Robinson complains that the district court abused its discretion
in refusing to grant a continuance or temporary postponement of trial so he could supplement his
disclosures concerning damages in light of the AT&T documents. See id. R. 193.6(c) ("Even if the
party seeking to introduce the evidence . . . fails to carry the burden [to show lack of unfair surprise
or unfair prejudice], the court may grant a continuance or temporarily postpone the trial to allow a
response to be made, amended, or supplemented . . . ."). Robinson orally requested this continuance
or postponement during the hearing on motions in limine on the day before trial began, after
AnyWare raised its complaints regarding the adequacy of his damages disclosures. On this record,
we cannot conclude that the district court abused its discretion in refusing to grant Robinson a
continuance. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002) (quoting
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)).

 As previously indicated, Robinson waited until ten days before the close of the
discovery period to notice the deposition of AT&T's records custodian. Moreover, the trial setting
was continued twice, once based on an agreed motion filed on April 1, 2008, and the second time
on Robinson's motion filed in March 2009, which was opposed by AnyWare and the Lubberings.
The district court granted the continuance with the admonishment that "[n]o further requests shall
be granted absent exigent circumstances." The court's order also explicitly moved the close of the
discovery period to thirty days before the June 1, 2009 trial date.

 When Robinson orally requested the third continuance or postponement, the
district court observed that the prior continuance order had indicated there would be no more delays,
"absent exigent circumstances," and that the court did not consider Robinson's failure to get his
discovery done to be an exigent circumstance. Robinson's counsel stated, "I'm not jumping up and
down for a continuance, Judge," to which the trial judge responded, "Yeah, and he's not accepting
your solution, so let's move on." Robinson did not file a written motion for continuance that day
or any day thereafter.

 A motion for continuance that is not in writing or compliant with rule 251 does
not preserve error. See Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 251; see also Dempsey v. Dempsey,
227 S.W.3d 771, 776 (Tex. App.--El Paso 2005, no pet.) (op. on reh'g). Even if error had been
preserved, we cannot conclude that the district court abused its discretion in declining to further
continue or postpone trial. We overrule Robinson's second issue. (10)


CONCLUSION

 We have concluded that the district court would not have abused its discretion in
excluding Robinson's damages evidence and in refusing him a continuance to supplement his
disclosures. Having excluded Robinson's damages evidence, the district court would not have
erred in disregarding the jury's damages finding and rendering a take-nothing judgment on
Robinson's claims against AnyWare. Consequently, we need not reach either Robinson's arguments
challenging AnyWare's other grounds for disregarding the damages finding or AnyWare's cross-point concerning its motion to disregard the jury's findings that the "saved" business agreement
was formed and that AnyWare breached it. See Tex. R. Civ. P. 47.1. We affirm the district court's
judgment. 



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: March 2, 2011

1. We use the Lubberings' first names as necessary for clarity.
2. While the existence of this document had been acknowledged by all parties, Robinson had
previously maintained that what purported to be his signature on the document was a forgery. He
relented, however, after the defendants secured a handwriting expert who opined otherwise.
3. See Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991);
Duncan Land & Exploration, Inc. v. Littlepage, 984 S.W.2d 318, 325 (Tex. App.--Fort Worth 1998,
pet. denied). 
4. As our caption reflects, Robinson's notice of appeal named not only AnyWare but
the Lubberings individually as appellees. However, all of the parties' issues on appeal concern only
the portion of the district court's judgment disposing of Robinson's claims against AnyWare.
Robinson has not briefed or argued any complaint with the district court's take-nothing judgment on
his claims against the Lubberings after he abandoned those claims at trial. We dismiss Robinson's
appeal of that portion of the judgment. See Tex. R. App. P. 38.1(i). Similarly, for clarity, we refer
to AnyWare as the sole appellee.
5. Robinson settled on October 2004 as a start date because he asserted that the pricing
differential with SBC became an issue in August 2004, and if agencies were contemplating making
a change, that would have taken about 60 days.
6. This figure deviated from the sum of the figures listed by each of the seven agencies, which
totaled $93 million. 
7. Citing this late discovery and his purported need to supplement his discovery responses,
Robinson made the oral motion for continuance or postponement that is the subject of his
second issue.
8. Robinson did not obtain a business-records affidavit from AT&T until after trial began, and
the district court refused to grant him leave to file the affidavit late. See Tex. R. Evid. 902(10)(a)
(requiring affidavits to be filed at least fourteen days before trial). Robinson thereafter attempted
to authenticate the documents through his own testimony as a former AT&T employee, but the
district court refused to admit them.
9. See Kellogg Brown & Root Int'l Inc. v. Altanmia Commerical Mktg. Co. W.L.L., No. H-07-2684, 2009 U.S. Dist. LEXIS 16007, *31-32 (S.D. Tex. Mar. 2, 2009) (denying motion for
reconsideration of ruling that affidavit of undisclosed witness should be admitted because witness's
identity and testimony contained in affidavit had been previously disclosed in arbitration proceedings
between same parties); Wells v. Berger, Newmark & Fenchel, P.C., No. 07 C 3061, 2008 U.S. Dist.
LEXIS 21608, *5-6 (N.D. Ill. Mar. 18, 2008) (ruling on motion in limine that testimony from
undisclosed witnesses was not barred because one witness's identity and relevance to litigation
had been made known during deposition of another witness and other witnesses were disclosed
during discovery period and were opposing party's former employees); Huffman v. City of Conroe,
Tex., No. H-07-1964, 2008 U.S. Dist. LEXIS 74311, *4-5 (S.D. Tex. Sept. 26, 2008) (denying
motion to strike late-disclosed witness based on court's finding that opposing party had known
about witness and his knowledge of issues related to case for at least six months); Capuano
v. Consolidated Graphics, Inc., Civil Action No. 06 C 5924, 2007 U.S. Dist. LEXIS 66626, *6-7
(N.D. Ill. Sept. 7, 2007) (denying motion in limine seeking to exclude allegedly undisclosed damages
evidence because complaining party had knowledge of documents and information, as well as
witnesses' identities and relevance from outset of case, but allowing party to object at trial to any
previously undisclosed damages exhibits).

10. In connection with his second issue, Robinson asserts that, in the alternative to his
first two issues, we should remand this case for jury determination of two questions that
went unanswered in the charge. Predicated on the jury's failure to find that Robinson and AnyWare
"agree[d] that Ken Robinson would receive twenty (20) percent of the revenue from any
and all business attributable to Texas state agencies that Ken Robinson saved for Any[W]are,"
Question 6 of the charge inquired whether Robinson had "saved Any[W]are's revenue attributable
to the Texas Department of Transportation." Predicated on an affirmative finding in that question,
Question 7 inquired as to Robinson's damages from AnyWare's failure to comply with its agreement
concerning TxDOT. Having found in the affirmative as to the broader agreement regarding "any and
all business attributable to Texas state agencies," the jury did not answer Questions 6 or 7. Robinson
urges that we should remand those issues to the district court. However, the district court has not
set aside or disregarded the jury's affirmative finding that Robinson and AnyWare formed the
broader agreement concerning "any and all business attributable to Texas state agencies"--the
converse of the predicate for reaching Questions 6 and 7--and Robinson did not preserve any
complaint regarding the manner in which these questions were predicated or the jury's failure to
answer Questions 6 or 7. Consequently, Robinson has presented nothing for review. See Tex. R.
App. P. 33.1(a).