COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

WILLIAM EDGAR DEMPSEY, SR.,                   )

                                                                              )             
No.  08-04-00306-CV

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )               
388th District Court

IRMA DELGADO DEMPSEY,                            )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 2004CM3064)

                                                                              )

 

 

O
P I N I O N

 

Appellant William
Edgar Dempsey, Sr. appeals a protective order granted on June 17, 2004 in favor
of Appellee Irma Delgado Dempsey.  In six
issues, Appellant complains that the trial court abused its discretion in finding
Appellee=s
testimony credible, erred in finding family violence on global allegations, and
erred in denying his motion for a continuance. 
We affirm.








Appellant and
Appellee were married on January 1, 1991 and have no children together.  On May 13, 2004, Appellee filed an original
petition for divorce in the 388th District Court in cause number 2004CM3064.  On May 28, 2004, Appellee filed an
application for a protective order pursuant to Title 4, Texas Family Code.  In her application, Appellee alleged that
Appellant committed several acts of family violence, namely:  (1) on or about May 14, 2004, Appellant
entered her home, stole personal items, and removed the load locks that support
the back porch; (2) on or about March 25, 2004, Appellant tried to force her to
have anal sex with him; (3) on or about October 2003, Appellant pushed her; (4)
on or about 2001 or 2002, Appellant pinned her to the bed, sat on her, and held
her arms causing bruises on her wrists; (5) on or about 2001, Appellant
threatened to burn the house down and kill her dogs; and (6) Appellant
threatened her by telling her, he would kill her if he catches her with anyone.  An order to show cause on the application was
filed on June 8, 2004.  A hearing on the
protective order was held on June 17, 2004 before the associate judge, who
found that family violence had occurred and was likely to occur again in the
future.  The district judge approved the
associate judge=s
recommendations that same date. 
Appellant filed his notice of appeal from the order on June 25, 2004 and
requested findings of fact and conclusions of law on July 8, 2004.  The findings of fact and conclusions of law
were filed on July 9, 2004.  A final
hearing on the divorce was held on September 1, 2004.

On September 15,
2005, this Court dismissed the appeal for lack of jurisdiction because the
order was issued during the pendency of the divorce.  See Ruiz v. Ruiz, 946 S.W.2d 123, 124
(Tex.App.--El Paso 1997, no writ). 
However, this Court subsequently granted Appellant=s motion for rehearing and withdrew our
prior opinion and judgment on October 20, 2005. 
The record in this case has been supplemented to include the parties= final divorce decree, which the trial
court signed on October 31, 2004. 
Because the record now shows that the parties=
divorce proceeding is final, we have jurisdiction to consider the merit=s of the appeal.  We issue this substitute opinion.








At the hearing,
Appellee testified to the events alleged in her application for the protective
order.  Appellee stated that on May 14,
2004, Appellant broke into her house when she was not there and took several
items, including two drawers out of her jewelry chest, the television, and the
load locks off the back porch.  Appellee
called the police to report the incident, but was told by Officer Balderama
that no crime was involved because her husband had lived there and a police
officer had been present when Appellant went into the house.

Appellee testified
that on March 25 or 26, 2004, she and Appellant were in the bedroom and he
wanted to make love.  He became very
aggressive towards her, grabbed her, shoved her on the bed, and attempted to
force Appellee to have anal and oral sex with him.  Appellee fought him off and suffered back
pain when he shoved her around.  She did
not call the police because her husband had a very bad temper, he had never
tried to force her like that before, and she figured that he had had a bad day.  On cross-examination, Appellee stated that on
the morning of March 25 or 26, Appellant had come by to the house and gotten
his things.  As he was walking out, he
told her that he had not loved her for a long time, but Appellant did not leave
her that day.








Appellee stated
that one evening in October 2003, Appellant pushed her during an altercation
between Appellant and her stepson Billy. 
She explained that she received a call from Marcela Dempsey, her in-law,
who told her that Appellant and her stepson were screaming at each other and
Appellee was afraid of what was going to happen.  Appellant had previously called her on his
way to the office and had told her that only one of them was going to leave
there alive.  Billy called her and told
her that his father had hit him in the chest with a loaded gun, had shot off
the gun, and that the bullet had gone right past his head.  He asked her to come and talk to
Appellant.  Appellee feared for her
safety, but after talking with her stepson, she knew that if she did not go
there something lethal was going to happen. 
Appellee did not call the police because she knew that Appellant=s son would not want to file charges
against his father.  On her way there,
Appellee called Appellant=s
brother and his brother called and talked to Appellant on the telephone.  When Appellee arrived, Billy was trying to
leave, but Appellant kept trying to grab Billy. 
When Appellant tried to grab Billy, Appellee stepped in between them
trying to stop Appellant and he shoved her out of the way.  Appellant was drunk at the time.

Appellee testified
about an incident that occurred in 1999 or 2001, in which Appellant became
angry during an argument.  According to
Appellee, she was lying on the bed when Appellant came into the bedroom and
started screaming and Acussing@ at her.  Appellant sat on her legs, grabbed her arms,
and held them down.  He put his face
right up to her and started screaming at her loudly and called her a
bitch.  His anger was very scary to
her.  He finally let go of one of her
arms and she shoved him, then jumped up, and called the police.  Appellee had red marks on her wrists.  During the 911 call, Appellee told the police
that her husband had guns in the house. 
Appellant called one of the neighbors and his son and they took the guns
out of the house.  Appellant was not
arrested and Appellee did not know if the police officer who came to the house
ever took a report about the incident. 
On cross-examination, Appellee explained that Appellant, his son, and
the neighbor met the police officer at the curb and she only spoke to the
officer for about five minutes.  Appellee
told the police that she did not want to press charges.  Appellee also testified that throughout their
marriage, Appellant had threatened to kill her if he ever found her with
someone else.








Police Officers
John Lanahan and Lawrence Dominguez testified at the hearing on Appellant=s behalf.  Both officers were involved in the incident
alleged to have occurred on May 14. 
They testified that they were dispatched to the residence to assist
Appellant in getting some of his belongings. 
Appellee was not present. 
Appellant did not use force to enter the house, rather a locksmith was
present.  It appeared to them that
Appellant was gathering his personal belongings and not stealing.  They did not make a report, but noted the
event in the activity log sheet.  The
officers saw Appellant leave the premises. 
Later on, Officer Balderama received a call back to report a burglary,
but Officer Dominguez notified him that they had gone out there and had
assisted Appellant in gathering his belongings. 
Jackie Dempsey, Appellant=s
brother, also testified about the May 14 incident, explaining that he had
helped Appellant move a recliner, Appellant=s
clothing, and load locks that were propped against the wall on the back
porch.  Mr. Dempsey confirmed that the
police were present, that Appellant did not use force, and they left the house
together.

Appellant
testified at the hearing.  According to
Appellant, on Thursday, March 25, 2004, he was out drinking with about twenty
friends at the Holiday Inn.  On Friday,
March 26, he stayed at the Red Roof Inn and on Saturday, March 27, he went to a
birthday party until 2 or 2:30 a.m. and then slept in one of the trucks at the
office.  Appellant denied ever going home
on any of those nights and denied the allegation that he tried to force
Appellee to have anal or oral sex with him. 
Appellant denied pinning Appellee to the bed in 1999 or 2001.  He explained that on that night, Appellee had
a temper tantrum and started yelling and screaming.  He told her to settle down and stop her Adamn lies.@  Appellant got dressed and walked out the
door.  Appellee jumped up at the same
time and called 911.  Appellant waited
outside for the police.  He was not
arrested and when asked if he minded leaving for the night, he told the police
that was what he was intending to do. 
Appellant testified that every word of Appellee=s
testimony was a lie.








At the conclusion
of the hearing, the associate judge held that she would be recommending to the
referring court that the application for a protective order be granted, having
found that family violence had occurred and is likely to occur again in the
future.  The trial court signed the order
granting the protective order on June 17, 2004. 
In its findings of fact and conclusions of law, the trial court found
that:  (1) Appellant committed family
violence on or about March 25, 2004 by attempting to force Appellee to have
sexual relations with him; (2) Appellant committed family violence on or about
October 2003 by pushing Appellee; (3) Appellant committed family violence on or
about 2001 or 2002 by pushing Appellee onto the bed, holding her down, and
causing bruises to her wrists; and (4) Appellant committed family violence by
threatening to kill Appellee if he ever caught her with someone else.  The court specifically found that Appellant
did not commit family violence on or about 2001 by threatening to burn down the
house and kill Appellee=s
dog and did not commit family violence on May 14, 2004 by breaking into the
marital home and taking items.








In his sixth
issue, Appellant argues that the trial court abused its discretion in denying
his motion for a continuance.  On the day
of the hearing, June 17, 2004, Appellant=s
counsel made an oral request for a continuance, arguing that he had
insufficient notice to procure additional witnesses for the proceeding.  Appellee=s
counsel objected to the motion and it was denied by the trial court.  The motion for continuance was not in writing
and was not in compliance with Rule 251 of the Texas Rules of Civil Procedure,
therefore, the oral request for a continuance does not preserve error.[1]  See Taherzadeh v. Ghaleh-Assadi, 108
S.W.3d 927, 928 (Tex.App.--Dallas 2003, pet. denied).  Even if error was preserved, the granting or
denial of a motion for a continuance is within the trial court=s sound discretion.  Villegas v. Carter, 711 S.W.2d 624,
626 (Tex. 1986).  The trial court=s action in denying a continuance will
not be disturbed unless the record discloses a clear abuse of discretion.  Id. 

When a respondent
to an application for a protective order is served notice of the application
within forty-eight hours before the time set for the scheduled hearing, upon
request by the respondent, the trial court must reschedule the hearing for a
date not later than fourteen days after the date set for the hearing.  See Tex.Fam.Code
Ann. '
84.004(a)(Vernon 2002).  Appellee filed
her application on May 28, 2004.  The
statute requires the trial court to set a date and time for the hearing no
later than the 14th day after the date the application is filed unless a later
date is requested by the applicant.  See
id. at '
84.001(a).  Appellant admits that he was
served notice on June 11, 2004 for the hearing scheduled on June 17, 2004.  Although Appellant received notice over
forty-eight hours before the hearing, he failed to request the mandatory
continuance pursuant to Section 84.004(a). 
Given these circumstances and the expedited nature of protective order
proceedings, we cannot conclude that the trial court abused its discretion,
that is, acted arbitrary and unreasonable, in denying his motion for a
continuance in order to procure additional witnesses for the proceeding.  Issue Six is overruled.

In Issues One
through Five, Appellant complains that the trial court abused its discretion
when it found family violence had occurred and was likely to occur again in the
future based solely on Appellee=s
testimony, which it should have discredited in its entirety.








In conducting our
review of the trial court=s
finding and the order for an abuse of discretion, we apply a two-prong
analysis:  (1) Did the trial court have
sufficient information upon which to exercise its discretion; and (2) did the
trial err in its application of discretion? 
Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.App.--El Paso 1998,
no pet.).  The traditional sufficiency of
the evidence review, articulated below, comes into play when considering the
first question.  Id.  We then proceed to determine whether, based
on the elicited evidence, the trial court made a reasonable decision or whether
it is arbitrary and unreasonable.  Id.


In considering the
legal insufficiency point, we consider the evidence that tends to support the
fact finder=s
findings and disregard evidence and inferences to the contrary.  Id. at 591.  If more than a scintilla of evidence exists
to support the questioned finding, the legal insufficiency point fails.  See id.; Tseo v. Midland Am. Bank,
893 S.W.2d 23, 25 (Tex.App.‑-El Paso 1994, writ denied).  In reviewing Appellant=s
factual sufficiency challenge, we examine all of the evidence in determining
whether the finding in question is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
The trier of fact is the sole judge of the credibility of the witnesses
and the weight given to their testimony. 
GTE Mobilnet of South Texas Ltd. Partnership v. Pascouet, 61 S.W.3d
599, 615-16 (Tex.App.--Houston [14th Dist.] 2001, pet. denied). 








Appellee was the
sole witness in support of her application for a protective order.  At the hearing, she testified that on March
25 or 26, 2004, Appellant attempted to force her to have anal and oral sex
against her will.  During the struggle,
Appellee suffered back pain.  In October
2003, Appellant pushed Appellee when she attempted to stop him from assaulting
her stepson.  In 1999 or 2001, an
incident occurred between Appellant and Appellee in which he screamed at her,
held her down on the bed by her legs and arms. 
Appellee suffered injuries to her wrists.  Appellee called the police, but decided not to
press charges against her husband. 
Appellee also stated that throughout their marriage, Appellant had
threatened to kill her if he ever caught her with somebody else.

Viewing the
evidence in favor of the trial court=s
finding, we conclude that Appellee=s
testimony provided more than a scintilla of evidence to support the family
violence finding.  Further, this evidence
was not too weak to support the finding nor is the finding so against the
overwhelming weight of the evidence as to be clearly wrong or manifestly
unjust.  Appellant complains that the
trial court abused its discretion by not discrediting all of Appellee=s testimony, in particular because the
court found his testimony and that of the police officers and Mr. Dempsey
credible with regard to the May 14 allegation. 
However, as the sole judge of the credibility of the witnesses, the
trial court is free to reject or accept all or part of a witness=s testimony.  See Peña v. Garza, 61 S.W.3d 529, 532
(Tex.App.--San Antonio 2001, no pet.). 
Therefore, the trial court did not abuse its discretion because it was
entitled to believe Appellee=s
version of events as to some of her allegations, but not believe her as to all
of them.  








Appellant also
complains that Appellee=s
testimony about the March 25 allegation at the protective order hearing on June
17, 2004 was contrary to her testimony at the final divorce hearing on
September 1, 2004.  The protective order
was issued on June 17.  Appellant
prematurely filed his notice of appeal on June 25.  Although Appellant attempted to elicit
testimony from Appellee about the March 25 allegation at the subsequent divorce
hearing, the trial court specifically stated that the protective order would
not be re-litigated during the divorce proceeding.  Appellant=s
complaint is akin to a collateral attack with regard to the evidence presented
at the protective order hearing.  We find
that the alleged contrary testimony at the final hearing has no bearing on the
trial court=s
decision to render a protective order in favor of Appellee, which based on the
evidence presented at the protective order hearing.  Regardless, Appellant=s
complaint has no merit because Appellee=s
testimony at the final divorce hearing was not inconsistent with her previous
testimony.  At both hearings, Appellee
testified that on one of the mornings in the days before Appellant finally left
her, he came by and collected his clothes without any incident.  Her testimony clearly indicates that the act
of violence alleged to have occurred on March 25 or 26, was after the morning
that Appellant told her that he no longer loved her.

Next, Appellant
complains that a global allegation of an act of violence in the years 1999 or
2001, is a guessing game for a respondent. 
The Texas Family Code does not require an applicant for a protective
order to provide specific facts of the alleged violence.  See Tex.Fam.Code
Ann. ' 82.004; Martinez
v. Martinez, 52 S.W.3d 429, 433 (Tex.App.--Fort Worth 2001, pet.
denied)(noting that an affidavit containing a detailed description of facts and
circumstances concerning the alleged family violence is only required when
seeking an ex parte temporary protective order).  In any event, there is no question that
Appellant had fair notice of the act of violence alleged to have occurred in
1999 or 2001.  Appellant specifically
denied the incident about which Appellee testified to and offered his own
account of the event.  He denied pinning
Appellee down to the bed in 1999 or 2001. 
He testified that it was Appellee, not him, who was yelling and
screaming that night.  Like Appellee, he
too recalled that she called the police during the incident.  Like Appellee, he testified that he spoke
with the police when they arrived and that he was not arrested that night.  Apparently, the trial court chose to believe
Appellee=s
testimony as to the initial acts preceding her 911 call over that of Appellant=s.








Finally, Appellant
contends that an act of family violence did not occur in October 2003 because
Appellee voluntarily placed herself in a dangerous situation and the perceived
threat was not directed against her.  However,
regardless of the reasons why Appellee chose to intervene, Appellant=s act of pushing Appellee during the
incident falls squarely within the definition of family violence as provided in
Section 71.004 of the Family Code.  See
Tex.Fam.Code Ann. ' 71.004(1).  We find no exception in the statute based
upon a victim being at fault for having placed herself in danger.  Rather, force is only justified in this
context when used to defend oneself and there was no evidence presented to show
that this exception applied in this case. 
See id. at '
71.004(1)(family violence Adoes
not include defensive measures to protect oneself.@).

We conclude that
the trial court had legally and factually sufficient information upon which to
exercise its discretion and also conclude that the trial court=s decision to grant the protective
order against Appellant was reasonable and not arbitrary.  Issues One through Five are overruled.

We affirm the
trial court=s order.

 

 

 

February
23, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
Under Rule 251, a party moving for a continuance must show sufficient cause
supported by affidavit, consent of the parties, or by operation of law.  Tex.R.Civ.P.
251.  If a motion for continuance does
not satisfy the requirements of Rule 251, it is presumed that the trial court
did not abuse its discretion in denying the motion.  See Favaloro v. Comm=n for Lawyer Discipline, 13 S.W.3d
831, 838 (Tex.App.--Dallas 2000, no pet.).