**Opinion issued December 31, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-22-00034-CV**

_____

**JOSEPH LOUISON, Appellant**

**V.**

**FIAVIEN CADDETTE, Appellee[1]**

---

**On Appeal from County Civil Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1168015**

---

**MEMORANDUM OPINION[2]**

---

[1] The style of this case in the trial court contains a misspelling of appellee's first and last name, i.e., "Fiavien Caddette." Appellee's first and last names spelled correctly are "Flavien Cadette."

[2] Appellant Joseph Louison filed a motion for en banc reconsideration of this Court's May 11, 2023, opinion and judgment. Because we issue a new opinion, the motion for en banc reconsideration is moot. *In re Wagner*, 560 S.W.3d 311, 312 (Tex.

This is an appeal from a final judgment involving an agreement for the sale of real property. Appellant Joseph Louison appeals the trial court's final judgment rendered after a bench trial in favor of appellee Flavien Cadette on Cadette's counterclaims against Louison for fraud and promissory estoppel. Louison raises four issues on appeal. In his first and second issues, he contends that the trial court erred in rendering judgment in favor of Cadette because (1) a party cannot enforce an agreement for the sale of real property without a writing which satisfies the statute of frauds and (2) Cadette failed to provide Louison with a formal written agreement which was a condition precedent to any future performance by Louison. In his third and fourth issues, Louison asserts that the trial court abused its discretion in admitting Cadette's exhibits and denying Louison's request for a continuance. We affirm.

## Background

On November 24, 2019, Louison and Cadette, along with Cadette's wife, Alix, met at a Golden Corral restaurant to negotiate the sale of a five-acre tract of

App.—Houston [1st Dist.] 2018, orig. proceeding) ("Because we issue a new opinion in connection with denial of rehearing, the motion for en banc reconsideration is rendered moot"); *see also Poland v. Ott*, 278 S.W.3d 39, 41 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (noting that motion for en banc reconsideration rendered moot by withdrawal and reissuance of opinion and judgment); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 40 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (supp. op. on reh'g) (noting that motion for en banc reconsideration moot when motion for rehearing granted and new opinion and judgment issue).

2

property in Saint Lucia (the tract). Cadette agreed to sell the tract, which was to be subdivided from a ten-acre tract of property he owned, to Louison for $225,000ECD.[3] Louison made three payments of $10,000 each to Cadette totaling $30,000 toward the sale price. Louison later demanded a refund of the $30,000 partial payment which Cadette refused.

## A.    The Pleadings

On April 23, 2021, Louison filed an original petition alleging as follows:

## III.

## Facts

Plaintiff and Defendant were in the process of negotiating a transaction involving some land. Defendant represented to Plaintiff that he had a plot of real property for sale. Plaintiff expressed an interest in the property. Defendant represented that he had good marketable title to the property.

Consequently, Plaintiff decided to make an earnest money deposit to demonstrate good faith. Defendant provided Plaintiff with three (3) informal receipts acknowledging payment of Plaintiff's deposits.

## IV.

There was no written agreement identifying the property or otherwise detailing the transaction provided to Plaintiff. In addition, Defendant did not show or provide Plaintiff a copy of documents showing that Defendant owned the property.

---

[3]    Saint Lucia's currency is the Eastern Caribbean dollar (ECD).

Defendant's failure to provide Plaintiff with proper documentation to legitimize the transaction only served to frustrate the purpose for which Plaintiff entered the transaction.

Defendant promised action which he had no intention of performing. Therefore, Plaintiff demanded a refund of his deposit, and Defendant refused to provide Plaintiff with a refund.

Plaintiff to date, lost two days from work in pursuing legal recourse, and will in all likelihood lose another day or two from work.

Louison sought "damages in excess of Ten Thousand Dollars ($10,000.00)" and attorney's fees "in accordance with the Texas Civil Practice and Remedies Code."

Cadette answered asserting a general denial and counterclaims for fraud and promissory estoppel. In support of his counterclaims, Cadette alleged that he and Louison entered into an agreement under which Cadette agreed to sell the tract to Louison for $225,000ECD. He alleged that, in reliance on Louison's promises, representations, and partial payments, Cadette hired a surveyor and began the process of subdividing the tract from a larger tract he owned to convey it to Louison, and he arranged for Louison to be picked up in Saint Lucia for a walking inspection of the property. Cadette further alleged that after he had incurred substantial expenses in reliance upon Louison's promise to purchase the tract, Louison began making false, unsubstantiated allegations that Cadette did not own the tract. Cadette also specially excepted to Louison's petition asserting that it failed to state a cause of action, plead all the elements of any particular cause of action, give fair notice of

4

the claims asserted against Cadette, or specify the statutory basis for his request for attorney's fees.

## B. The Bench Trial

The trial court conducted a one-day bench trial on November 1, 2021. Four witnesses testified: Louison, Cadette, Alix, and Cadette's attorney, Jarett LaRochelle, on the issue of attorney's fees.

### 1. Louison

Louison testified that he agreed to purchase land located in L'Abbayee, Saint Lucia from Cadette for $225,000ECD. Louison did not know whether the tract he agreed to buy was the entire tract of property Cadette owned or only a portion of it or how long it would take to pay the entire purchase price. He stated that he was not familiar with the property and did not travel to Saint Lucia to inspect the property. Louison testified that he intended to build homes and a farm for agriculture and livestock on the tract but that he did not know whether the tract was suitable for his intended purpose.

Louison testified that he made three partial payments of $10,000 each to Cadette toward the purchase price on May 21, 2020, October 21, 2020, and December 27, 2020. He testified that he asked Cadette to provide him with documentation showing that Cadette owned the tract for sale and told him that he would not proceed with the purchase if Cadette did not provide him with the

requested documentation. When Cadette did not provide him with proof of ownership, Louison demanded a refund of the $30,000 deposit. Louison testified that he repudiated the agreement after Cadette refused to show him proof that he owned the property. Louison denied accusing Cadette of not owning the property or representing to anyone in their church or community that Cadette was trying to sell him property he did not own.

After the presentation of Louison's case, Cadette moved for a directed verdict on the ground that Louison's petition failed to state a cause of action or any basis for recovery of damages or attorney's fees. After noting that Louison had presented no evidence supporting an award of attorney's fees, the trial court granted the motion for directed verdict on Louison's request for attorney's fees. The trial court, however, withheld its ruling on the motion with respect to whether Louison's pleadings stated a cause of action until after Cadette presented his case.

## 2. Cadette

Cadette testified that he met Louison at church and has known him for ten years. On November, 24, 2019, Cadette and Alix met Louison for breakfast at a Golden Corral restaurant. Louison told Cadette that he wanted to retire in Saint Lucia and buy a piece of land for a coconut plantation. Cadette told Louison he owned a ten-acre tract of land in Saint Lucia and that he would sell five acres of the tract to Louison for $250,000ECD. Louison rejected the price proposed by Cadette but

6

agreed to buy the tract for $225,000ECD. Cadette testified that he agreed to sell the property to Louison for $225,000ECD and that they sealed the deal with a handshake. Cadette testified that Louison subsequently made partial payments totaling $30,000, and that he told Louison that these payments were nonrefundable. Cadette told Louison that he would generate a deed of sale once Louison had paid the total sales price of $225,000ECD. Cadette testified that he gave Louison a receipt for the $30,000 partial payment but that the receipt did not include the terms of the sale.

Cadette testified that he showed Louison a copy of his deed to the property. Cadette's attorney offered the deed into evidence, and Louison's attorney objected because the exhibits had not been provided to him prior to trial and on relevancy grounds. The trial court called a recess and instructed the parties to exchange their exhibits and discuss admissibility. When trial resumed, Louison's attorney objected to all the defense exhibits because they had not been previously provided and on hearsay grounds. The trial court overruled the objections and admitted Defense Exhibits 1 through 7.[4]

---

[4] Exhibit 1, entitled "Deed of Donation" and registered with the Registrar of Land of Saint Lucia on October 25, 2012, reflects that Alix deeded an undivided one-half share of the ten-acre tract of land to Cadette. Exhibit 2 is the receipt for Cadette's $600 payment for the inspection and valuation report. Exhibit 3 is the consultancy report and the receipts for Cadette's payments to the consultant. Exhibit 4 is the receipt for Cadette's payment to the surveyor. Exhibits 5 and 6 are the valuation reports for an additional small parcel of land Cadette offered to give Louison and

7

Cadette testified that he showed the property deed to Louison proving that he owned the ten-acre tract from which he would subdivide the five acres. Cadette testified that another man offered to buy the five-acre tract from him for $275,000ECD but Cadette refused the offer. Cadette stated he wanted to sell the property to Louison because they had attended the same church together for the past ten years, Cadette valued their friendship, and Louison would be able to watch over the remaining five acres for him. Cadette testified that he also offered to give Louison an additional small parcel of land for a building for his crops as part of the agreement.

Cadette testified that he incurred out-of-pocket expenses to prepare the property to sell to Louison. He paid $600 for inspection and valuation of the property, $5,000 to a consultant who was responsible for overseeing the sale of the tract, and $8,000 to hire a surveyor. Cadette testified that he was required to hire the consultant and surveyor in order to subdivide the ten-acre tract and that the local government required the paperwork before it would approve the sale.

Cadette testified that he made arrangements for Louison to inspect the property in 2020 while Louison was in Saint Lucia with his wife to visit her mother who was sick. After Louison quarantined for two weeks, Cadette called a friend,

---

the ten-acre tract, respectively. Exhibit 7 is the handwritten receipt reflecting Louison's partial payment of $30,000 to Cadette signed and dated by the parties.

8

Gregory Victor Emmanuel, to pick up Louison and take him to inspect the property. Cadette testified that Louison called him from the property and told Cadette he "love[d] it," and "go ahead" and "get the property going for him." Cadette also asked Emmanuel to make a video of the property which Cadette sent to Louison.

Cadette testified that Louison came to his house in December 2020 and told Cadette he wanted his money back. Cadette testified that Louison did not give him a reason for wanting to "back out" of the agreement, and he told Louison that he could give him more time if he was "tight for money." Cadette testified that Louison called him a liar and told him that he was trying to sell something he did not own. Cadette showed Louison the property deed proving that he owned the property and told him that he had foregone other offers to sell the property and had incurred expenses in preparing the property for sale.

On cross-examination, Cadette acknowledged that the receipt for Louison's $30,000 payment did not reflect that the payment was nonrefundable but stated that this condition was a part of the parties' agreement from the beginning. Cadette also testified that he did not give Louison a bill of sale or property sale receipt that included a description of the property. He testified that the terms of the agreement were not reduced to writing because it was a "handshake agreement."

9

### 3.    Alix

Alix testified that that she was present at the breakfast meeting when Cadette and Louison discussed the sale of the property. She stated that Louison paid a total of $30,000 toward the sales price. Alix testified that the deposit was nonrefundable. She stated that there were other buyers interested in buying the property but that Cadette had promised to sell it to Louison.

### 4.    LaRochelle

In support of Cadette's request for attorney's fees, LaRochelle testified that he has been practicing law in Texas since November 2003, that he charges $250 an hour, and the fees customarily charged by attorneys in the area for the same or similar services is $250 to $400 an hour. He stated that the matter required at least fourteen hours of time and service, the novelty and difficulty of the questions involved was not exceedingly high, and the skill required to perform the legal services required in the case was that of a normal practitioner with some experience in civil litigation. LaRochelle testified that he is a solo practitioner and that the case required a portion of his time but did not preclude him from accepting other employment. He testified that he charged Cadette $3,500 in attorney's fees and that these fees were reasonable and necessary in light of the above factors. LaRochelle stated that the following fees would be reasonable and necessary in the event of an appeal: (1) $5,000 for representing Cadette in the court of appeals; (3) $5,000

through the petition-for-review stage in the Supreme Court of Texas; and (3) $5,000 for merits briefing in the Supreme Court.

After both sides rested, Louison's attorney requested a trial amendment with respect to the evidence about Louison's partial payment of $30,000. The trial court advised that a trial amendment was no longer appropriate because Louison had put on his evidence and rested his case. When the trial court asked about the basis of Louison's suit because it was unclear that his petition stated a cause of action upon which the court could grant relief, Louison's attorney stated:

> The suit basically, Judge, is an unjust enrichment—unjust enrichment fraud suit, which he—he collected money for and he did not give anything in return. And we believe the statute of frauds is still alive. And to the extent that Mr. Cadette is saying that my client is responsible for anything whatsoever, we believe that he should have had an agreement in writing which specifies and stipulates all of the conditions that he is wanting to claim that he talked about.

The trial court stated that Louison neither pleaded fraud or unjust enrichment nor raised the statute of frauds as a defensive matter, and that the only evidence presented with regard to the $30,000 partial payment was that it was nonrefundable. The trial court denied Louison's request for a trial amendment, granted Cadette's motion for instructed verdict on Louison's petition, and stated that it would grant judgment in favor of Cadette on his counterclaims.

The trial court signed its final judgment on November 17, 2021. It ordered that Louison take nothing on his claims against Cadette, and it awarded $13,600 in

11

damages and $3,500 in attorney's fees as well as conditional appellate fees to Cadette. The trial court entered findings of fact and conclusions of law the same day. Louison filed a motion to vacate and for new trial which the trial court denied on January 12, 2022.

This appeal followed.

## Standard of Review

In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Miranda v. Byles*, 390 S.W.3d 543, 553 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The trial court's findings of fact have the same force and dignity as a jury's verdict upon jury questions. *Luna v. Pickel*, No. 02-19-00371-CV, 2020 WL 5949927, at *5 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op.); *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "The general rule is that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court." *See Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We apply a de novo standard of review to a trial court's conclusions of law in a bench trial and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Wood v. Wiggins*, 650 S.W.3d 533, 544 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 820, 822 (Tex. 2005)).

## Statute of Frauds

In his first issue, Louison contends that the trial court erred in rendering judgment in favor of Cadette on his counterclaims because a party cannot enforce an agreement for the sale of real property without a writing which satisfies the statute of frauds. Cadette responds that Louison failed to plead the statute of frauds in his petition and did not file an answer to Cadette's counterclaims for promissory estoppel and fraud.

A contract for the conveyance of real property must comply with the statute of frauds to be enforceable. *Ramji v. 6100 Clarkson, L.P.*, No. 01-18-00044-CV, 2019 WL 2455620, at *7 (Tex. App.—Houston [1st Dist.] June 13, 2019, no pet.) (mem. op.); *Lewis v. Adams*, 979 S.W.2d 831, 834 (Tex. App.—Houston [14th Dist.] 1998, no pet.). To comply with the statute of frauds, the contract must be in writing and signed by the party to be charged with the agreement. TEX. BUS. & COM. CODE § 26.01(a). However, the statute of frauds is an affirmative defense to the enforcement of a contract, which must be pleaded or it is waived. TEX. R. CIV. P. 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of frauds . . . and any other matter constituting an avoidance or affirmative defense."); *Ramji*, 2019 WL 2455620, at *7; *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 875 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Here, as the trial court noted, Louison did not plead the affirmative defense of statute of frauds. In fact, the record reflects that Louison did not file an answer to Cadette's counterclaims for promissory estoppel and fraud. Because Louison failed to plead the statute of frauds as an affirmative defense, he has waived it. *See Ramji*, 2019 WL 2455620, at *7 (concluding where defendant never pleaded statute of frauds as affirmative defense to parties' contract, he could not complain for first time on appeal that sales agreement was invalid because plaintiff never signed it); *Cannon v. MBCI*, No. 14-11-00895-CV, 2013 WL 1845736, at *4 (Tex. App.—Houston [14th Dist.] Apr. 30, 2013, pet. denied) (mem op.) (concluding party who failed to plead statute of frauds as affirmative defense to personal guarantee agreement waived it); *Coastal Resources, Ltd. v. Los Lazos Const. & Lease Serv., LLC*, No. 04-11-00763-CV, 2013 WL 1760602, at *5 (Tex. App.—San Antonio Apr. 24, 2013, pet. denied) (mem. op.) (concluding defendant waived affirmative defense of statute of frauds because it never pleaded it as affirmative defense to plaintiff's breach of contract claim); *Nicol v. Gonzales*, 127 S.W.3d 390, 393 (Tex. App.—Dallas 2004, no pet.) (concluding landowner waived affirmative defense that document purporting to give neighbor easement over part of his property failed to contain description of easement sufficient to satisfy statute of frauds where he failed to plead affirmative defense of statute of frauds and record did not show that defense was tried by consent); *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 776 (Tex.

14

App.—Corpus Christi 2001, no pet.) (holding defendant waived statute of frauds to enforcement of personal guarantee where he failed to plead it as affirmative defense).

We overrule Louison's first issue.

**Condition Precedent**

In his second issue, Louison argues that Cadette failed to provide him with a formal written agreement which was a condition precedent to any future performance by Louison. Thus, he argues, Cadette's breach in failing to satisfy the condition precedent renders Cadette's counterclaims invalid. In response, Cadette asserts that he specifically pleaded that all conditions precedent to his right to recover were performed or occurred, and that Louison failed to specifically deny that any condition precedent he now raises on appeal was not performed or did not occur.

A condition precedent may be either a condition to the formation of a contract or a condition to an obligation to perform an existing agreement. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). Where there is a condition precedent to the formation of a contract, then no binding contract will arise until the specified condition has occurred or been performed. *See Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 144 (Tex. App.—Dallas 2012, no pet.). On the other hand, conditions precedent to an obligation to perform are those acts or events which occur subsequent to the making of a contract and which must occur before there is a

15

right to immediate performance and before there is a breach of a contractual duty. *Hohenberg Bros. Co.*, 537 S.W.2d at 3.

The burden of both pleading and proof of performance of a condition precedent to recovery is governed by Texas Rule of Civil Procedure 54:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so ple[]d, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

TEX. R. CIV. P. 54. When a plaintiff alleges "all conditions precedent have been performed or have occurred," a defendant must specifically deny any conditions that were not performed or have not occurred. *Id.*; *Greathouse v. Charter Nat'l Bank-Sw.*, 851 S.W.2d 173, 177 (Tex. 1992). When a defendant fails to specifically deny any performance or occurrence of conditions precedent, "[R]ule 54 does not cumber [a plaintiff] with proving[] the performance or occurrence of any condition precedent to its recovery." *Abrams v. Salinas*, 467 S.W.3d 606, 615 (Tex. App.—San Antonio, 2015, no pet.) (quotation omitted); *see also Sharifi*, 370 S.W.3d at 147; *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 508 (Tex. App.—El Paso 2010, no pet.) ("Where a defendant does not specifically deny a plaintiff's performance-of-conditions-precedent pleading, a plaintiff is not encumbered with proof of such performance.").

16

Here, Cadette pleaded that all conditions precedent were met. Specifically, he alleged that "[p]ursuant to Rule 54 of Texas Rules of Civil Procedure, Defendant/Counter-Plaintiff FLAVIEN CADETTE would say that all conditions precedent to his right to recover have been performed or have occurred." Louison, however, did not file an answer to Cadette's counterclaims or otherwise specifically deny the performance or occurrence of any conditions precedent to Cadette's recovery on his counterclaims. Absent a specific denial of each condition precedent, Louison is not entitled to complain about the alleged non-performance of the conditions precedent. *See Abrams*, 467 S.W.3d at 615–16 (concluding that former husband waived for appellate review his claim that former wife failed to satisfy conditions precedent and thus could not seek to enforce his obligation under agreed divorce decree to pay one-half of child's college expenses where record did not contain any pleadings showing former husband specifically denied allegation that all conditions precedent had been met); *Sharifi*, 370 S.W.3d at 147 (concluding prospective buyer did not have to prove satisfaction of conditions precedent in agreement to purchase automotive repair business that seller did not specifically deny in his live pleading in action for breach of agreement based on seller's failure to appear at closing); *Rockwall Commons*, 331 S.W.3d at 508 (concluding borrower waived on appeal argument regarding any failure by lender to satisfy conditions

17

precedent, in lender's contract action against borrower, because borrower did not specifically deny performance or occurrence of specific conditions in answer).

We overrule Louison's second issue.

## Admission of Trial Exhibits

In his third issue, Louison contends that the trial court abused its discretion in admitting Cadette's exhibits because they were not produced or exchanged prior to trial and they constitute inadmissible hearsay. Cadette responds that the trial court did not abuse its discretion when it overruled Louison's objections and that it properly admitted Cadette's exhibits.

The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aqua Marine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

At trial, Cadette's attorney offered Exhibits 1 through 7 for admission into evidence. Louison's attorney objected to admission of the exhibits because Cadette's attorney did not exchange them prior to trial, and on hearsay and relevancy grounds.[5] The trial court instructed the parties to exchange their exhibits and discuss

---

[5] It is undisputed that Louison did not serve any requests for production on Cadette or any other discovery requests during the course of litigation.

18

admissibility during a recess. When trial resumed, Louison's counsel objected again to admission of the defense exhibits. The trial court overruled the objections.

## A. Hearsay

In his brief on appeal, Louison argues that the trial court erred in admitting the exhibits because they were inadmissible hearsay. Specifically, he asserts that they are inadmissible because no foundation was laid for their admission as a business record, the exhibits lacked trustworthiness, and they are documents prepared in anticipation of litigation. Louison, however, did not make these objections in the trial court. The record shows that while Louison objected to the exhibits as inadmissible hearsay, he did so only on the grounds that he could not "cross-examine the documents." Louison's complaints on appeal, i.e., that the documents lacked foundation and trustworthiness and were prepared in anticipation of litigation, do not comport with the objections he made at trial.[6] An objection on appeal that does not comport with the objection raised at trial presents nothing for review. *See Weidner v. Sanchez*, 14 S.W.3d 353, 368–69 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Religious of Sacred Heart of Tex. v. City of Hous.*, 836 S.W.2d 606, 614 (Tex. 1992)); *F.D.I.C. v. Golden Imports, Inc.*, 859 S.W.2d 635,

---

[6] Louison also objected to the exhibits in the trial court on relevancy grounds arguing that they postdated the date of the transaction giving rise to the suit. Louison does not argue on appeal that the trial court erred in overruling his objection to admission of the exhibits on relevancy grounds.

19

641 (Tex. App.—Houston [1st Dist.] 1993, no writ) (concluding party waived complaint on appeal that trial court erred in submitting special issue to jury because it improperly commented on weight of evidence where party did not make same objection at trial). Louison has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1.

## B. Exhibits Not Produced or Exchanged Prior to Trial

Louison contends that the trial court abused its discretion in admitting Cadette's exhibits because they were not produced or exchanged prior to trial.

Texas Rule of Civil Procedure 194.1 states that "[e]xcept in a suit governed by the Family Code, as exempted by Rule 194.2(c), or as otherwise agreed by the parties or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties the information or material described in Rule 194.2, 194.3, and 194.4." TEX. R. CIV. P. 194.1(a).[7] Rule 194.2, "Initial Disclosures," states that "[w]ithout awaiting a discovery request, a party must provide to the other parties . . . a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the responding party has in its possession, custody, or control, and may use to support its claims or defenses,

---

[7]    In 2020, the Texas Supreme Court amended Texas Rule of Civil Procedure 194, effective January 1, 2021. *See Siana Oil & Gas Co. LLC v. White Oak Operating Co., LLC*, No. 01-21-00721-CV, 2022 WL 17981572, at *8 (Tex. App.—Houston [1st Dist.] Dec. 29. 2022, no pet.) (mem. op.). Louison filed his petition on April 23, 2021 and, therefore, the amended rule applies.

20

unless the use would be solely for impeachment," within thirty days after filing its first answer unless a different time is set by the parties' agreement or court order. TEX. R. CIV. P. 194.2(a), (b)(6). Rule 194.4 provides that "[i]n addition to the disclosures required by Rule 194.2 and 194.3,[8] a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment: . . . (2) a list identifying each document or other exhibits, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises." TEX. R. CIV. P. 194.4(a)(2). Section (b) states that "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial." TEX. R. CIV. P. 194.4(b). "A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed . . . . unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice

---

[8]    Rule 194.3 addresses the required disclosures of testifying experts. *See* TEX. R. CIV. P. 194.3.

the other parties." TEX. R. CIV. P. 193.6(a).[9] A review of the record shows that neither party provided the discovery required by Rule 194.

In its "Order for Trial Setting Via Video Conference" signed on October 6, 2021, the trial court ordered that "[a]ll trial exhibits must be pre-marked and e-filed with the Clerk by Wednesday prior to the trial date." Thus, the parties were required to file their exhibits no later than October 27, 2021. Cadette filed his "Exhibit List," which listed Exhibits 1 through 7, on November 1, 2021, the date of trial.

At trial, Louison objected to Exhibits 1 through 7 on the grounds that they were not produced or exchanged prior to trial. The trial court overruled the objection. Because Cadette failed to timely disclose the exhibits as required by Rule 194 and did not timely file his exhibits in compliance with the trial court's October 6, 2021 order, the trial court erred in overruling Louison's objection and allowing Cadette to introduce Exhibits 1 through 7 into evidence. *See* TEX. R. CIV. P. 193.6(a).[10]

A court of appeals cannot reverse a trial court's judgment based on the erroneous admission of evidence unless the error "probably caused the rendition of

---

[9] Subsection (b) states that "[t]he burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record." TEX. R. CIV. P. 193.6(a).

[10] Cadette did not argue, nor did the trial court find, that good cause existed for his failure to timely disclose the exhibits prior to trial or that his untimely disclosure of the exhibits would not unfairly surprise or unfairly prejudice Louison. *See* TEX. R. CIV. P. 193.6(a).

22

an improper judgment." TEX. R. APP. P. 44.1(a)(1); *see Jackson v. Takara*, 675 S.W.3d 1, 6–7 (Tex. 2023). The complaining party must "demonstrate that the judgment turns on the particular evidence admitted." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). Further, the erroneous admission of cumulative evidence or evidence that does not control a material and dispositive issue is generally harmless and thus does not require reversal of the trial court's judgment. *Jackson*, 675 S.W.3d at 7; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *Benson v. Chalk*, 536 S.W.3d 886, 904 (Tex. App.—Houston [1st 2017, pet. denied) (citing *Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995)). In evaluating whether erroneously admitted evidence is harmless, we review the entire record, considering, in particular, the "state of the evidence, the strength and weakness of the case, and the verdict." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979)); *see also Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018).

Exhibit 1 is titled "Deed of Donation" and reflects that Alix deeded an undivided one-half share of the ten-acre tract of land to Cadette. Exhibit 2 is the receipt for Cadette's $600 payment for the inspection and valuation report. Exhibit 3 is the consultancy report and the receipts for Cadette's payments to the consultant. Exhibit 4 is the receipt for Cadette's payment to the surveyor. Exhibits 5 and 6 are

23

the valuation reports for an additional small parcel of land Cadette offered to give Louison and the ten-acre tract, respectively. Exhibit 7 is the handwritten receipt reflecting Louison's partial payment of $30,000 to Cadette signed and dated by the parties.

Exhibits 1 through 7 are cumulative of testimony that was presented at trial. Cadette testified that he showed the deed to Louison to prove that he owned the ten-acre tract from which he would subdivide the five acres, and that he had foregone other offers to sell the property and had incurred expenses in preparing the property for sale. He testified that he incurred the following out-of-pocket expenses to prepare the property to sell to Louison: $600 for inspection and valuation of the property, $5,000 to a consultant who was responsible for overseeing the sale of the tract, and $8,000 to hire a surveyor. Cadette testified that he was required to hire the consultant and surveyor in order to subdivide the ten-acre tract, and that the local government required the paperwork before it would approve the sale. Cadette testified that he offered to give Louison an additional small parcel of land for a building for his crops as part of the agreement. Cadette testified that Louison made partial payments totaling $30,000, and that he gave Louison a receipt for the $30,000 partial payment and told him that the payments were nonrefundable. Alix also testified that Louison paid a total of $30,000 toward the sales price and that the deposit was

nonrefundable.[11] Although Louison objected to the admission of the exhibits, he did not object to the above testimony. Thus, although the trial court erred in admitting Exhibits 1 through 7, the error was harmless because the exhibits were cumulative of testimony presented at trial. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 906–07 (Tex. 2004) (concluding any error in admission of videotape recording harmless where defendant did not object to other evidence, i.e., live testimony of witness about contents of videotape recording); *Flores v. Ochoa*, No. 09-21-00384-CV, 2024 WL 3706855, at *8 (Tex. App.—Beaumont Aug. 8, 2024, no pet.) (mem. op.) (concluding that error, if any, in allowing expert's testimony regarding causation was cumulative of causation opinions expressed by other expert witnesses who testified, without objection, that plaintiff's injuries were caused by accident); *Benson*, 536 S.W.3d 886 at 905 (concluding any error in admitting into evidence video recordings of out-of-court experiment as to timing of traffic lights at intersection where automobile collision occurred was harmless where recordings were cumulative of other testimony presented at trial); *Wood*, 650 S.W.3d at 564 (finding that any error in admission of exhibit that was purported settlement of accounts and showed that real estate investor owed partner, was harmless in real

---

[11] We note that, on direct examination, Louison testified that he demanded a refund of the $30,000 deposit he had paid Cadette after Cadette failed to provide him with proof of ownership.

estate investor's action against partner because exhibit was cumulative of other unobjected-to evidence regarding settlement). We overrule Louison's third issue.

**Motion for Continuance**

In his fourth issue, Louison contends that the trial court abused its discretion in denying his request for a continuance. He argues that good cause was shown for a continuance because his attorney was ill and he had a doctor's appointment that afternoon, and a continuance would not have prejudiced Cadette's rights. In response, Cadette asserts that the trial court did not abuse its discretion because Louison did not file a written motion for continuance and he failed to comply with the rules of civil procedure.

Rule of Civil Procedure 251 states that a continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. When a motion for continuance is not verified or supported by affidavit, we presume the trial court did not abuse its discretion by denying the motion. *Shaw v. Lemon*, 427 S.W.3d 536, 544 (Tex. App.—Dallas 2014, pet. denied) (citing *Moreno v. Silva*, 316 S.W.3d 815, 818 (Tex. App.—Dallas 2010, pet. denied)). Further, a motion for continuance that is not in writing and not in compliance with Rule 251 does not preserve error for appeal. *See Redmond v. Kovar*, No. 09-17-00099-CV, 2018 WL 651272, at *3 (Tex. App.— Beaumont Feb. 1, 2018, no pet.) (mem. op.) (concluding trial court did not err in

denying motion for continuance where motion was made orally and was not supported by affidavit or consent of parties and therefore did not comply with Rule 251); *Dempsey v. Dempsey*, 227 S.W.3d 771, 776 (Tex. App.—El Paso 2006, no pet.) (noting oral request for continuance does not preserve error); *Taherzadeh v. Ghaleh–Assadi*, 108 S.W.3d 927, 928 (Tex. App.—Dallas 2003, pet. denied) (concluding presentation of oral motion without supporting affidavit failed to preserve complaint for appellate review). The record shows that Louison's motion was made orally and was not supported by affidavit or by consent of the parties. Because the motion for continuance was not in writing and did not comply with Rule 251, Louison's oral request for a continuance did not preserve error. *See Dempsey*, 227 S.W.3d at 776.

We overrule Louison's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Guerra
Justice

Panel consists of Justice Landau, Countiss, and Guerra.

27