# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00275-CV

---

**Babatunde Ayodele Cole, Appellant**

**v.**

**Megan Cole, Appellee**

---

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-24-001498
### THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant, Babatunde Cole, appeals the trial court's grant of a Family Code protective order against him in favor of his wife, appellee Megan Cole.[1] He contends that the evidence was legally and factually insufficient to support the necessary family-violence finding and that his constitutional rights were violated by the time limit that the trial court imposed on him at the final hearing. We conclude that the evidence was legally and factually sufficient and that he did not preserve his constitutional issue, so we affirm.

---

[1] The testimony indicates that the parties are also party to a separate divorce proceeding. We refer to the parties by given names in order to reduce confusion. Because Babatunde refers to himself in his briefing as "Tunde," we will use that name as well.

## BACKGROUND

The protective-order application was filed by the State on Megan's behalf, and the final hearing on the application was by bench trial before an associate judge. Megan, Tunde, and a friend of the couple all testified. Megan in her direct-examination testimony described several purported incidents of family violence. Ultimately, although the associate judge stated on the record that he found her testimony to be not credible about all but one of the incidents, it found her testimony credible about one incident, in which Tunde "conked"—both parties used that word—Megan on the head with a closed fist. Tunde admitted to the one incident of "conking." The trial court granted the protective order in Megan's favor.

Some weeks later, the State, at Megan's urging, moved that the protective order be terminated. At the hearing on that motion, she testified that she no longer wanted the protective order in place. The trial court obliged and terminated the protective order. Before any of this, however, Tunde perfected this appeal from the grant of the protective order and has pursued this appeal to overturn the finding of family violence.

## DISCUSSION

Tunde brings two issues about the now-terminated protective order.[2] First, he challenges the legal and factual sufficiency of the evidence to support the finding that he committed family violence. Second, he contends that he was denied both his federal constitutional right to due process and his state constitutional right to due course of law because of the limited amount of time that he was allowed to present his case and examine witnesses at the final hearing.

---

[2] We may review whether the protective order was appropriately granted even though it is now terminated. *See Kitchen v. Lutcavage*, No. 03-19-00421-CV, 2020 WL 3468147, at *1–2 (Tex. App.—Austin June 24, 2020, no pet.) (mem. op.).

***The evidence was legally and factually sufficient to support the finding of family violence.***

As to evidence sufficiency, the particular finding at issue here is that Tunde committed family violence when he struck Megan during the conk incident. For all the other purported incidents of family violence, the trial court stated on the record that Megan's testimony was not credible and that, thus, no family violence occurred. But as to the conk incident, the court stated on the record that it found her testimony to be credible.

We review evidence-sufficiency issues in these circumstances under the familiar standards. *See B.C. v. Rhodes*, 116 S.W.3d 878, 883–84 (Tex. App.—Austin 2003, no pet.). Because the parties tried this case to the bench, the trial court, as factfinder, is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *McCombs v. State*, No. 03-24-00450-CV, 2025 WL 1910923, at *2 (Tex. App.—Austin July 10, 2025, no pet. h.) (mem. op.). We will not substitute our judgment for the trial court's just because we might reach a different conclusion. *B.C.*, 116 S.W.3d at 884.

To challenge the legal sufficiency of the evidence to support a finding on which an adverse party bore the burden of proof, the appellant must show that no evidence supported the finding. *CIM Mgmt. Grp. v. Burnett*, No. 03-21-00229-CV, 2022 WL 3567782, at *2 (Tex. App.—Austin Aug. 19, 2022, no pet.) (mem. op.). No evidence supports a finding when (1) the record reveals the complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Godfrey v. Godfrey*, No. 03-07-00220-CV, 2008 WL 3166328, at *1 (Tex. App.—Austin Aug. 8, 2008, no pet.) (mem. op.). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their

3

conclusions.  *Id.*  When considering legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not disregard it.  *See State v. V.T.*, 575 S.W.3d 921, 925 (Tex. App.—Austin 2019, no pet.); *Godfrey*, 2008 WL 3166328, at *1.  "[L]ooking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

To challenge factual sufficiency in the same circumstances, the appellant must show either that the evidence was too weak to support the finding or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust.  *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).  For factual sufficiency, we consider all the evidence, both for and against the finding under attack.  *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Godfrey*, 2008 WL 3166328, at *1.

A finding of family violence is necessary for a Family Code protective order.  *See* Tex. Fam. Code §§ 81.001, 85.001.  "Family violence" for these purposes includes:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1).

What follows was Megan's testimony about the conk incident, occurring roughly a month into the parties' marriage:

Q Okay. And then you mentioned that there were also incidents in December of '13. Do you recall those incidents or incident?

A I remember immediately after coming home from the honeymoon, there was—getting hit in the head for seemingly no reason, maybe just having a disagreement over something. Like nothing of any substance. And then just being struck in the back of the head, with a closed fist to the back of the head (indicating). And I remember my—seeing stars and my eyes went black. I seen stars. I remember, like, screaming out, like, "What are you doing?" And I remember him telling me that it's called a conk. This is something his mother used to do.

Q And when you say a closed fist hit you in the back of the head, who did that?

A Babatunde.

Q And had he ever done what he called a conk prior to that?

A No, but many times after.

Q And where were you when this occurred, the conk?

A So we were living at his apartment that he had had before our marriage, which was on Stonehollow Drive in Austin.

This testimony is legally sufficient to support the family-violence finding. It supplies some evidence from which reasonable and fair-minded people could conclude that Tunde committed an act against Megan, a member of his household, that was intended to result in physical harm or bodily injury or that was a threat that reasonably placed her in fear of imminent physical harm or bodily injury. *See id.*; *Hagner v. Valdez*, No. 04-23-00379-CV, 2025 WL 912826, at \*3, \*4–5 (Tex. App.—San Antonio Mar. 26, 2025, no pet.) (mem. op.); *Vongontard v. Tippit*, 137 S.W.3d 109, 111–12, 113 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Tunde argues against this conclusion by pointing out that the trial court considered Megan's testimony not to be credible concerning other incidents. True enough, but it also considered her testimony credible about *this* incident, and the court was within its rights to do so.

5

*See Dempsey v. Dempsey*, 227 S.W.3d 771, 777 (Tex. App.—El Paso 2005, no pet.) (concluding that trial court did not abuse its discretion by making finding of family violence when granting protective order "because it was entitled to believe Appellee's version of events as to some of her allegations, but not believe her as to all of them"). Tunde also argues from testimony that Megan gave at the later hearing on the motion to terminate, but that testimony was not before the trial court when it granted the protective order, so it does not undermine the legal sufficiency of the evidence to support the grant of the order. *See Fryday v. Michaelski*, 541 S.W.3d 345, 352 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (stating that reviewing courts when reviewing evidence to support trial courts' findings "do not consider evidence that was not before the trial court at the time it made its ruling in the case").

As for factual sufficiency, Tunde raises his own testimony about the conk incident, in which he testified that a conk is a "boip on the head" akin to a little tap, that he conked Megan only the one time, and that he conked her to make her violence against him stop. But he also testified that the conk was "absolutely a mistake." The trial court could have disbelieved his testimony, and, in any event, his testimony does not show either that Megan's testimony was too weak to support the family-violence finding or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. The evidence was therefore factually sufficient to support the family-violence finding. We overrule Tunde's first issue.

### Tunde has not preserved his constitutional issue about the time limit at the final hearing.

Tunde failed to preserve his second issue, that his due-process and due-course-of-law constitutional rights were violated by an unequal division of time to conduct the final hearing. Even constitutional issues must be preserved for appellate review. *See In re*

*L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *In re Commitment of Byrum*, No. 03-23-00388-CV, 2025 WL 1449264, at *5 (Tex. App.—Austin May 21, 2025, no pet. h.) (mem. op.); *see* Tex. R. App. P. 33.1(a).  Parties must make the trial court aware of their complaint for the complaint to be preserved.  *See* Tex. R. App. P. 33.1(a)(1)(A).  But Tunde never made the trial court aware of any complaint about the time limit imposed on him at the final hearing.

He says on appeal that his trial counsel "repeatedly raised concerns about how long [Megan] was taking to present her case, leaving little to no time for [Tunde] to challenge the multitude of false allegations."  But that is not an accurate view of the record, at least as concerns preservation.  After Megan's testimony, Tunde's counsel said: "Your Honor, I know you're cognizant of the time; I'm just checking in given we announced for 3 hours.  It's already been two hours and four minutes."  No constitutional complaint is raised there.  During Tunde's direct-examination testimony, his counsel said in a question, "[W]e're on a time crunch, so we're just going to get to the other stuff," but that raises no complaint either.  Not long after, counsel asked the court if he would be "allowed to get beyond 15 minutes," to which the court answered, "You can go as close as you need to."  No complaint made there.  Interspersed throughout these instances, the judge four times referred to the time limits that it would impose or to how much time Tunde had left, and at no time did he raise any complaint.  He never made the trial court aware of any constitutional complaint about the time limit imposed on him at the final hearing.  *See In re I.J.*, No. 05-23-00309-CV, 2024 WL 1671938, at *3 (Tex. App.—Dallas Apr. 18, 2024, no pet.) (mem. op.); *In re Marriage of Harrison*, 557 S.W.3d 99, 127 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  This issue thus is not preserved, so we do not reach it.

## CONCLUSION

We affirm the trial court's grant of the protective order, recognizing that the trial court has now terminated the protective order.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   August 28, 2025

8